John Francis DEVINE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16554.

United States Court of Appeals
Ninth Circuit.

May 6, 1960.

D. V. Hanneken, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, Leila F. Bulgrin, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was convicted by a jury on three counts of violating Title 18 U.S.C. § 1702, which provides in pertinent part:

"Whoever takes any letter * * which has been in any post office * * * before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence * * * shall be * * * imprisoned not more than five years * * * "

The court sentenced appellant to five years on each count, to run concurrently. Timely appeal is taken here, and this Court has jurisdiction. 28 U.S.C. § 1291.

Count I charged appellant with taking on February 21, 1959 a letter addressed to Hays Company, 311 East Fourth Street, Los Angeles 13, California. Count II charged appellant with taking on February 21, 1959 a letter addressed to Irving Blitz & Associates, 421 South Wall Street, Los Angeles 13, California. Count III charged appellant with taking on February 21, 1959 a letter addressed to Philip Jaffe, 338 East Fourth Street, Los Angeles 13, California.

The evidence against appellant was overwhelming as to his guilt in taking letters, once in United States mail, from the places to which they were addressed.[1]

1. A mail carrier testified that on Saturdays he delivered mail to 421 South Wall Street (between Fourth and Winston Streets in Los Angeles, California) by dropping it through the regulation mail slot onto the floor, and at 421½ South Wall Street,

Despite this evidence, appellant seeks reversal. Two errors are charged:

1. The insufficiency of the evidence (a) to sustain the elements of the crime, and (b) to overcome the presumption of appellant's innocence.

2. Prejudicial misconduct on the part of government counsel.

by pushing it under the front door onto the floor.

A second letter carrier (advised of appellant's appearance by having seen photographs of him on February 19, 1959) while delivering mail on February 21, 1959, saw appellant standing in the doorway at 356 South Los Angeles Street (two blocks away from 421 South Wall Street) and later trying the doorknob at 360 South Los Angeles Street. He notified postal inspectors of the appellant's presence and actions. The carrier delivered mail to Philip Jaffe's place of business (338 East Fourth Street) on that day, when the door was locked (he had tried the door), by passing mail through a slot in the door causing it to fall to the floor. The carrier testified he also delivered mail to Hays Company, 311 East Fourth Street, on that day by pushing mail through a side slot in the locked door and seeing the mail inside on the floor.

Irving Blitz identified Exhibit 7 as a check for $284.20, dated February 19, 1959, payable to Irving Blitz & Associates. The check covered an invoice for twenty four transistor radios previously billed to its maker. Blitz testified he had never received this check "in his hands." (Count II.)

Philip Jaffe identified Exhibit 12-A as a check for $85.00, dated February 19, 1959, payable to Philip Jaffe. The check covered a business transaction between the witness and the maker, Portland Check Room of Stockton, California. Jaffe testified he had never received this check "in his hands," nor the envelope postmarked February 20, 1959, addressed to him, with the maker's name and address on the outside. (Count III.)

Bert Goldner was a manufacturer of picture frames known as Acme Frame Company, and later as Western Frame Company. He had received a purchase order for frames from the Los Angeles office of the United States Rubber Company, knowing they would pay it through their New York office. That invoice, less discount, was $49.66. Exhibit 9 was a check, issued by United States Rubber Company, New York City, dated February 16, 1959, in the sum of $49.66, payable to Western Frame Company. Typed over an erased space opposite payee was the name "John F. Devine." The unerased address was "421 Wall St., Los Angeles 13, Calif." The check was endorsed "John F. Devine." Goldner testified Devine was unknown to him; did not and had never worked for Goldner; and had no authority to endorse checks for him.

Gene Yamamoto, an accountant for the Hays Company (Count I) testified (a) as to a transaction by that company with Balfour Guthrie & Company relating principally to Exhibit 13, a "Notice of Arrival," and (b) as to a transaction between Hays Company and Pringle Drug Company of Riverside, California. He testified that Hays Company had not received Exhibit 19, a check dated February 19, 1959 in the sum of $11.47 from Pringle Drug Company of Riverside, California.

Other witnesses employed by the makers of the various checks (a) identified and testified as to the mailing of Exhibit 19 (check) by Pringle Drug Company and Exhibit 18, the Pringle Drug Company envelope, postmarked February 20, 1959 in Riverside California; (b) identified and testified to the mailing by Balfour Guthrie & Company in San Francisco on February 20, 1959 of the "sailing letters" (Exhibits 13 and 15), the envelope (Exhibit 14), and the orange colored copy of Exhibit 16 (the freight bill); (c) identified and testified as to the mailing of Exhibit 12, the envelope, 12-A, the check, and 12-B, the letter of transmittal, by Portland Check Room in Stockton, California, mailed February 19, 1959; (d) identified and testified as to the mailing of Exhibit 17 (check) and 17-B (envelope) by Service Exchange Distributors in San Francisco; (e) identified and testified as to the making and mailing of Exhibit 9 (check), and that while this check was payable to Western Frame Company, the United States Rubber Company had no account with, and no sum was payable to, John F. Devine. A duplicate of the check was placed in evidence (Government's Exhibit 20) and records showing it was in payment of the Western Frame Company invoice.

Two postal inspectors testified they watched appellant walk about a four block square area in the vicinity of Fourth Street and Los Angeles Street in Los Angeles, California, on February 21, 1959. They saw him stop and stand close to the stone front of 421 South Wall Street (Count II). They saw him stand on the stoop of a store at Fourth and

The basis of the first point is not that the mail allegedly (and for the purpose of this argument, admittedly) taken by appellant had not already been delivered to the persons named in the indictment, *i. e.*, The Hays Company (Count I), Irving Blitz & Associates (Count II), and Philip Jaffe (Count III), but that there was no sufficient proof of nondelivery to the person to whom it was directed, inasmuch as appellant may have been an authorized agent of the firm's or persons named as the respective addressees.

■ Appellant's counsel admits that Section 1702 contemplates a *manual* delivery of mail to the addressee, and, of course, this is the law. Rosen v. United States, 1918, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406; Maxwell v. United States, 8 Cir., 1956, 235 F.2d 930. The jury was properly so instructed. But, says appellant, there is no proof that appellant was not one of the persons to whom the mail was directed, or not an authorized agent of one of them (*i. e.*, a partner or employee of "Hays Co." or an associate or employee of "Blitz & Associates," or an employee of Philip Jaffe). The addressees, says appellant, were "companies" or groups made up of a number of persons whose identities remained "throughout the trial unidentified and unknown" and hence "as a matter of law must include the appellant."

Such a position entirely overlooks, among other things, the testimony of appellant himself that he was an unemployed cook; that at the date of his arrest he had not worked for anyone for some time; that he was looking desperately for work on February 21, 1959; and that *he had not worked at any time in 1959*. When counsel for the government sought to elicit whether appellant had *ever* had any connection with the Hays Company (Count I), appellant's counsel objected. The objection was sustained. Presumably any attempt to ob-

Wall Streets (Exhibit 23). Here he discarded an envelope resembling Exhibit 8, with a distinctive yellow and blue coloring on the envelope. At another stop near Fourth and Wall Streets, appellant was seen to stop and discard an orange paper, similar in color to the fourth copy of Exhibit 16 (Balfour Guthrie & Company freight bill to the Hays Company).

Appellant then walked to the entrance of Jaffe & Company, backed up against the doorway and "kept shuffling his feet around." Occasionally he would turn to face the door and stoop over. When pedestrians passed, he would stop all motion. He would then shuffle his feet, stoop over, and "fumble around" the bottom of the door. "He would manipulate his hands near the bottom of the door, moving his hands back and fourth." He then pulled an envelope out from the bottom of the door. (Exhibit 24 shows the view the inspectors had of the front of the Jaffe store where appellant was standing.) Appellant walked a few more blocks, and was arrested by the post office inspectors. He was under surveillance for at least one hour by these inspectors prior to his arrest.

At the time of appellant's arrest, he had Government Exhibit 12, the letter to Jaffe, in his hand unopened. (This was opened at the trial by Mr. Jaffe.) As the officers walked to their car with their prisoner, he admitted having in his possession other mail, and first handed Exhibits 10 and 11 (circulars from other Jaffe mail) to the officers. As he walked along with the officers, appellant dropped a crumpled bit of paper from his hands then within his pocket. When picked up, it proved to be Government Exhibit 9, the United States Rubber Company check. One inspector, going back to the southwest corner of Wall and Fourth streets, where he had seen appellant discard a paper, found at that spot Exhibit 8, an envelope. The witness crossed to the northwest corner of Wall and Fourth Streets and recovered Government Exhibit 18, the Pringle Drug Company envelope, and Exhibits 13 and 14, the Balfour Guthrie & Company envelope and sailing instructions.

When searched after arrest, Government Exhibits 7 (a check) and 19 (a check) were found in appellant's wallet.

Appellant was the only witness in his own defense. He admitted stopping in the doorways to get out of the rain; to shuffling his feet because his shoes were tight; to bending down to rub his sore feet. He admitted taking a notebook out of his pocket to look for addresses, but denied he ever had any envelopes in his possession. He testified he had never seen any of the Exhibits before his arrest.

tain similar information from the appellant would have met like objection and a similar ruling.

But the record is not bare of all testimony from which inferences could have been drawn by the jury. When shown a photograph of the entrance to Jaffe's place of business, appellant did not recognize it. He would not say whether or not it was there he had stopped to shuffle and stoop, because he did not know or recognize the premises shown in the photograph. Further, to avail appellant anything of value from this line of defense would require us to hold as a matter of law that for the few days elapsing between the date of the checks and appellant's arrest, there was no proof that appellant was not an employee of Jaffe, *and* of Irving Blitz & Associates, *and* of Hayes Company, as well as Western Frame Company. During this precise time appellant had denied he was employed anywhere, and this is evidence he was not employed by Jaffe, or Blitz, or Hays. Appellant's name appeared on the United States Rubber Company check where the name Western Frame Company had been erased. Could the jury have inferred that such removal, and the signing of his own name on the reverse side of the check, were part of his duties as an authorized representative of West-

ern Frame Company? The opposite inference would arise. No attempt was made specifically by the appellant, when he testified, to claim or prove he had not endorsed such check, or had not changed the name of the payee.

We must also keep in mind the defense relied upon by appellant. He did not attempt in any way to show he was an employee, or an authorized agent of any of the companies or individuals involved, authorized to accept mail. His sole defense was that he had never before seen the damning documents, allegedly found on him, or seen to have been discarded by him.

■ We therefore cannot say the evidence produced in this case was entirely consistent with appellant's innocence, nor as consistent with his innocence as with his guilt. Thus, several of the cases relied upon by appellant have no bearing on this case, for their legal principles do not come into play. We find credible evidence that appellant was neither an addressee, nor an authorized agent of an addressee, of the letters taken from the mail.

The second error urged is that the court refused to grant a mis-trial based on the alleged prejudicial misconduct of the prosecution.[2]

2. Mrs. Bulgrin (for the prosecution) during argument: " * * * This is Mr. Blitz' place. You see here is a space underneath the door, ladies and gentlemen. There is space underneath this doorway where the Western Frame Company was located. There is space under the doorway where Philip Jaffe was located. As a matter of fact, the mailman testified on Saturdays he put the mail underneath the door.

"Now, ladies and gentlemen, I think that the only reasonable inference you can draw is that the defendant had some way to get this mail out from underneath the doorway. This isn't in evidence and I don't say the defendant had this, but—

"Mr. Hanneken: Your Honor, counsel displays an implement here that has in no way been identified with this case. We have no evidence on it. I think this is highly prejudicial.

"Mrs. Bulgrin: I don't claim it is in the case. I want to use it as an illustration. I can talk about it, anyhow.

"The Court: I don't think you should refer to anything except the evidence in the case. If you are referring to anything that is not in evidence, please don't do it.

"Mrs. Bulgrin: I don't want to waste the time arguing about it. I will go ahead.

"Ladies and gentlemen, you can only get underneath a doorway where there is this space with some kind of instrument. There was this maneuvering of the defendant at the Jaffe store. Obviously, I think anybody could figure out that that was a little bit of maneuvering to get underneath the door of some kind with a heavy strap or something that is firm enough to go in and rest on a letter. You can see these letters are fairly light. They

It should first be noted that no motion was made by appellant for a mis-trial. Counsel for appellant was alert, and objected to the reference to "this" before "it" had even been described for the record. The court sustained this objection; admonished the prosecution not to refer to anything not in evidence, and the prosecution dropped the subject.

Despite such favorable ruling, appellant's counsel himself brought up the subject in his own argument to the jury, described "it" as a "brand new coat hanger," and argued that no such instrument had been found on appellant at his arrest.[3]

■ Because appellant at no time moved for a mis-trial, he has waived his point, if he at any time had one.

Nor did appellant ever move the court to admonish the jury to disregard any such argument. No instruction to that effect was offered by either side. No objection was made to the instructions as given by the court. There being no timely objection unacted upon by the court, no curative action having been requested, and the only emphasis on the disputed wire having been placed thereon by appellant's counsel, we find no prejudice; and we further hold that if any prejudice did exist, it was waived by appellant. Appellant's "only case in point" is, in our opinion, inapposite.

We note that counsel for appellant was appointed by the court to represent appellant below, and that despite his desire to be relieved on this appeal, that request was refused. We thank him for his contribution to the cause of justice.

The judgment is affirmed.

---

are not heavy. They are fairly light. If you have got something on one of these letters from underneath the door where it is sitting on the floor, you could just manage to lay it on there and then drag it out this way.

"Obviously the defendant did just that because two men watched him come up from underneath the door with the letter." (Tr. p. 236–7.)

3. Mr. Hanneken for the defense, in argument: "The prosecution tried to introduce something, I think we had a coat hanger here, a brand new coat hanger, and it lies on the table here. I don't feel it was proper to introduce it at the time.

"Remember Mr. Devine was standing at the Jaffe corner there and these inspectors were watching him. If you look at the Jaffe doorway, he was standing almost flush with the street there shuffling his feet a little. How is he manipulating some wire contraption that the prosecution would have you think he used if those inspectors couldn't see the wire contraption? Where was it? They found everything else, but they didn't find that.

"Ever since he was at the Jaffe store they watched him. What happened, if there was a wire there? How could he have it on his feet and use it and the inspectors not see him using it? But these inspectors were watching him. I think we have no evidence there was any such thing going on." (Tr. p. 245–6.)