UNITED STATES of America, Plaintiff–Appellee,

v.

Robert J. WINSLOW, Defendant– Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Stephen E. NELSON, Defendant– Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Procter J. BAKER, Defendant–Appellant.

Nos. 91–30043, 91–30044 and 91–30091.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1992.

Decided April 1, 1992.

As Amended May 14, 1992.

Douglas Vander Boegh, Churchill & Vander Boegh; Gar Hackney, Lyons, Scott, Hackney & Jackson, Boise, Idaho; and Everett D. Hofmeister, Coeur d'Alene, Idaho, for defendants-appellants.

Ronald D. Bowen, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Before HUG, NOONAN and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## OVERVIEW

Appellants Robert J. Winslow and Stephen E. Nelson, members of an organization known as the Aryan Nations, traveled from Hayden Lake, Idaho to Seattle, Washington for the purpose of exploding a bomb in a gay bar. They were arrested in Washington after they had bought the components for the bomb, but before they had assembled it. They had been accompanied on the trip by Rico Valentino, an undercover informant who had penetrated the Aryan Nations organization.

Winslow, Nelson and Procter J. Baker, a coconspirator who had remained in Idaho, were convicted of conspiracy to build a pipe

bomb and travel in interstate commerce to kill, maim, or wound human beings, in violation of 18 U.S.C. § 371; and possession of unregistered destructive devices, in violation of 26 U.S.C. § 5861(c)(d)(f) and (i). Winslow and Nelson were also convicted of interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952; and carrying firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1).

We have jurisdiction of these appeals pursuant to 28 U.S.C. § 1291, and we affirm. The relevant facts are set forth in the discussion of the various issues.

## UNDERCOVER AGENT JURY INSTRUCTION

The FBI used undercover informant Rico Valentino to monitor the appellants' criminal activity. Much of the evidence against the appellants at trial was supplied by Valentino. Although an entrapment instruction was not requested, the trial court read to the jury an instruction concerning the role of undercover agents. Directly after this instruction, the court instructed the jurors to "examine Mr. Valentino's testimony with greater caution than that of an ordinary witness," and "consider the extent to which it may have been influenced by the receipt of benefits and compensation from the Government."

■ The appellants chose not to request an entrapment instruction. Nelson and Winslow contend that it was error for the trial court to read the undercover agent instruction in the absence of an entrapment instruction. We reject this argument. .

In his opening statement, Nelson's counsel characterized Valentino as a man who had been paid to lie, warned the jury to be careful in believing his testimony, and likened his actions as an undercover agent to a spider pouncing on its prey. Winslow's counsel stated that Valentino had engaged in lies and deceit, and criticized the fact that he had been paid over $90,000 as an informant. Nelson testified that Valentino bought him a gun, frequently talked about violence, paid for the trip to Seattle, and paid for gunpowder for the bomb.

In light of the appellants' insinuations that the government and Valentino acted improperly, the district court did not abuse its discretion by giving the undercover agent instruction to help the jury understand the nature of undercover police work. See United States v. Hoyt, 879 F.2d 505, 510–11 (9th Cir.) (not plain error to give undercover agent instruction in absence of entrapment instruction), amended on other grds., 888 F.2d 1257 (1989); United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989) (challenges to jury instructions reviewed for abuse of discretion). Furthermore, the trial court's cautionary instruction, with regard to examining Valentino's testimony, neutralized whatever prejudicial effect the undercover agent instruction may have caused. See United States v. Fera, 616 F.2d 590, 597 (1st Cir.) (improper suggestions arising from undercover agent instruction may be neutralized by curative instruction), cert. denied, 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980).

## NONDISCLOSURE OF INFORMANT RAP SHEET

■ Winslow and Nelson contend the government violated their due process rights by failing to provide "Brady" evidence favorable to them and material to their guilt or punishment. See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

The evidence sought was Valentino's unedited FBI rap sheet. The government did not turn over the rap sheet because it felt disclosure would jeopardize Valentino's security. Instead, the government produced a summary of the information contained in the rap sheet. The district court ordered this summary and the underlying rap sheet turned over to the magistrate judge for his determination whether the summary was accurate. The appellants agreed to this procedure, and did not pursue their request for the rap sheet thereafter. In this appeal they contend that a Brady error occurred because Valentino's rap sheet was not turned over to them.

The appellants' reliance on *Brady* is misplaced. No *Brady* issue exists in this case, among other reasons, because "the defense was not, in fact, prevented from examining undisclosed statements." *United States v. Brown*, 562 F.2d 1144, 1151 (9th Cir.1977). Defense counsel never sought disclosure of the rap sheet after they agreed the magistrate judge should compare it with the summary. Defense counsel also failed to request a ruling as to whether the summary was accurate. Under these circumstances, they may not now complain that the rap sheet, which they did not receive, should have been turned over as well as the summary, which they did receive. *See id.*

## OUTRAGEOUS GOVERNMENT CONDUCT

On appeal, all three appellants argue for the first time that the trial court should have dismissed the indictment because it resulted from outrageous government conduct that violated their rights to due process.

■ As a general rule, we will not address arguments raised for the first time on appeal. *Jovanovich v. United States*, 813 F.2d 1035, 1037–38 (9th Cir.1987). This rule, however, is a discretionary one, and we have recognized exceptions "(1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a change in law raises a new issue while an appeal is pending, and (3) when the issue is purely one of law." *Id.* at 1037.

Here, the issue has been fully briefed and argued on both sides. The facts are not in dispute on this question. Accordingly, we exercise our discretion and consider the issue. *See United States v. Phelps*, 877 F.2d 28, 31 (9th Cir.1989) (reaching the merits of an outrageous government conduct claim raised for the first time on appeal).

■ The outrageous government conduct defense is available only when "the government is so involved in the criminal endeavor that it shocks our sense of jus-

tice." *United States v. So*, 755 F.2d 1350, 1353 (9th Cir.1985). Law enforcement conduct becomes constitutionally unacceptable when "the police completely fabricate the crime solely to secure the defendant's conviction." *United States v. Emmert*, 829 F.2d 805, 811 (9th Cir.1987).

■ The facts of the present case do not support a claim of outrageous government conduct. At the time Valentino first targeted the appellants for investigation, both Winslow and Nelson had already expressed interest in blowing up establishments frequented by homosexuals. Valentino's acts of supplying Winslow with beer and food, and paying for the trip to Seattle and the bomb components, did not constitute outrageous government conduct. *See United States v. Citro*, 842 F.2d 1149, 1152–53 (9th Cir.) (undercover agent's conduct in proposing and explaining details of credit card scheme to defendant and in supplying him with counterfeit credit cards did not constitute a due process violation), *cert. denied*, 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988). Valentino did not suggest or set up the plan from which the conspiracy evolved. *See United States v. Smith*, 802 F.2d 1119, 1126 (9th Cir.1986) (supplying opportunity for defendant to arrange drug sale was not outrageous government conduct because informant did not set up the source from which the defendant would purchase the drugs).

While it is true that Valentino was paid $90,000 by the FBI as compensation for his undercover activity, "the government may employ undercover tactics to infiltrate criminal ranks and may rely on paid informants in order to locate and arrest criminals." *United States v. McQuin*, 612 F.2d 1193, 1195–96 (9th Cir.), *cert. denied*, 445 U.S. 955, 100 S.Ct. 1608, 63 L.Ed.2d 791 (1980).

Nor did the arrests of Nelson and Winslow before the intended Seattle bomb was assembled, but after its components had been purchased, amount to outrageous government conduct. "Police are not required to delay arrest until innocent bystanders are imperiled." *United States v. Moore*, 921 F.2d 207, 209 (9th Cir.1990).

## MOTION FOR MISTRIAL AND EVIDENTIARY OBJECTIONS

### A. Motion for Mistrial

■ Nelson, Winslow and Baker argue that their convictions should be reversed on all counts because the district court erred in denying their motions for a mistrial. The decision of a district court to deny a motion for a mistrial is reviewed for abuse of discretion. *United States v. Davis*, 932 F.2d 752, 761 (9th Cir.1991).

On the tenth day of trial, Nelson and Baker moved for a mistrial because the prosecutor referred to the term "Aryan Warrior" when questioning Nelson. They argued at trial, and in this appeal, that the reference to "Aryan Warrior" was prejudicial. Winslow did not join in the motion for a mistrial, but he had brought motions *in limine* and at the pretrial conference to preclude the use of the term "Aryan Warrior." His motion *in limine* was denied on the ground that it was premature. The motion was renewed at the pretrial conference, but a ruling on it was held in abeyance pending trial.

■ By not moving for a mistrial or joining in the other appellants' motion for a mistrial at the time of trial, Winslow waived his right to challenge the denial of the motion. *See Devine v. United States*, 278 F.2d 552, 556 (9th Cir.1960) (defendant waived alleged misconduct by failing to move for mistrial). In any event, however, we reject all of the appellants' arguments that the district court erred in denying their mistrial motions.

■ Evidence introduced at trial established that the appellants were members of the Aryan Nations organization, sometimes referred to as "Aryan Warriors." Because the term "Aryan Warrior" was relevant to background material, and referred to in testimony and other evidence presented to the jury, it was not improper for the prosecutor to mention it when questioning Nelson. *See United States v. Marques*, 600 F.2d 742, 749 (9th Cir.1979) (not misconduct for prosecutor to mention connection between defendant and Hell's Angels because evidence showed defendant stated he sold drugs to them), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *United States v. Cutler*, 806 F.2d 933, 936 (9th Cir.1986); *cf. Dawson v. Delaware*, — U.S. —, —, 112 S.Ct. 1093, 1099, 117 L.Ed.2d 309 (1992) (the first amendment prevents employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried).

### B. Evidentiary Objections

We review the district court's evidentiary rulings for abuse of discretion. *Cutler*, 806 F.2d at 936.

■ The district court did not abuse its discretion in admitting testimony that referred to controversial aspects of the Aryan Nations organization. The court balanced the concerns of both the government and the appellants, by not allowing the prosecutor to offer in depth explanations of objectionable terms that came up during testimony or argument. It was not improper for the district court to permit a limited explanation of some of the practices of the organization. *See Cutler*, 806 F.2d at 936 (witness could testify about background material of the Aryan Nations organization because it would help the jury understand other evidence and relevant issues).

## SUFFICIENCY OF THE EVIDENCE

■ All three appellants moved for judgment of acquittal at the end of the government's case. However, they failed to renew their motions for judgment of acquittal at the close of all the evidence. Consequently, we review their sufficiency of the evidence arguments only for plain error to prevent a miscarriage of justice. *United States v. Lai*, 944 F.2d 1434, 1440 (9th Cir.1991), *cert. denied sub nom. Brandon v. United States*, — U.S. —, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992). And, in resolving the issue of sufficiency of the evidence, the government is entitled to "'all reasonable inferences which may be drawn from [the evidence], when viewed in the light most favorable to the govern-

ment.'" *United States v. Davis*, 932 F.2d 752, 761 (9th Cir.1991) (citations omitted).

We have carefully reviewed the record in light of these standards, and hold that there is sufficient evidence, as hereafter noted, to support the appellants' convictions.

## A. The Conspiracy Count

The indictment charged Winslow, Nelson and Baker with conspiracy to make, possess, conceal, and detonate destructive devices transported in interstate commerce, in order to kill, wound, or maim people and damage buildings. To prove this conspiracy, the government had to establish: "'(1) an agreement to engage in [the] criminal activity [charged], (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime.'" *United States v. Medina*, 940 F.2d 1247, 1250 (9th Cir.1991) (citation omitted).

### 1. Nelson

Valentino's testimony, as well as tape recorded statements of Nelson, established that Nelson agreed to accomplish the illegal objective charged. Not only did Nelson tell Valentino that they were invited by Winslow to go along on the bombing of a homosexual bar in Seattle, he boasted that Valentino wanted them to act as "lookouts" for the bombing. Shortly before they left for Seattle, Nelson and Winslow discussed obtaining the earlier assembled pipe bomb from Baker. After not being able to locate Baker, Nelson actively participated in purchasing the components necessary to build another pipe bomb. Once the group reached Seattle, he contacted a friend and tried to borrow a drill to use in assembling the bomb.

There was ample evidence to support Nelson's conviction of the conspiracy count.

### 2. Baker

According to Valentino's testimony, Baker stated on April 8, 1990, that he had found a few pieces of pipe which could be

turned into a good bomb. On April 14, 1990, after helping Winslow detonate a pipe bomb, Baker discussed the effect an explosion from a similar bomb would have on a room full of people. He explained that in order to kill the most people, a bomb should be placed on a table, or at table level. When Valentino, Baker and Winslow discussed the number of homosexual people that would be killed by a bomb similar to the one they detonated, Baker stated that the gravel and nails inside it would be lethal. Baker then told Winslow that it would be best to buy pipe and pipe caps for the bombs at various stores.

After the April 14, 1990 bomb detonation, Baker, Winslow and Valentino discussed who would keep the second assembled pipe bomb, and Baker finally agreed to take it home with him. Shortly before embarking on the trip to Seattle, Winslow and Nelson tried to get the second bomb from Baker, but they could not find him.

The evidence connecting Baker to the conspiracy was sufficient to support his conviction. "Once the existence of a conspiracy is proved, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is 'slight,' is sufficient to convict defendant of knowing participation in the conspiracy." *United States v. Stauffer*, 922 F.2d 508, 514–15 (9th Cir. 1990).[1]

## B. Possession of Destructive Devices Count

Nelson argues that the government presented insufficient evidence to find him guilty of possession of unregistered destructive devices. We disagree.

The Supreme Court has stated that the criminal act of one conspirator in furtherance of the conspiracy is "attributable to the other[ ] [conspirators] for the purpose of holding them responsible for the substantive offense." *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946).

---

1. Winslow does not contend the evidence was insufficient to support his conviction on the conspiracy count.

The jury found Winslow and Baker guilty of possessing unregistered destructive devices. The evidence established that they possessed such devices on April 14, 1990, the day the first bomb was detonated. Because Winslow, Nelson and Baker were convicted of the conspiracy count, and the possession of destructive devices charge was a foreseeable substantive offense committed in furtherance of the conspiracy, Nelson is responsible for it. *See id.* at 646–48, 66 S.Ct. at 1183–84.

**C. Interstate Travel in Aid of Racketeering Count**

 In order to convict Winslow and Nelson of interstate travel in aid of racketeering as charged in the indictment, the government was required to prove: (1) travel in or use of the facilities of interstate commerce with (2) intent to commit a crime of violence in order (3) to further an arson of a building or business and (4) " 'a subsequent overt act in furtherance of' " arson. *United States v. Stafford*, 831 F.2d 1479, 1482 (9th Cir.1987) (quoting *United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982)); *see also* 18 U.S.C. § 1952 ("the Travel Act").

The evidence showed that Nelson and Winslow traveled in interstate commerce, from Idaho to Seattle, with the intent to bomb a gay bar. The government presented evidence that the bomb Winslow planned to build, a combination fragmentation and fire bomb, would further the unlawful activity of arson. Nelson and Winslow performed overt acts in furtherance of arson when they bought the components necessary to construct a fragmentation and fire bomb, and attempted to obtain a drill to assemble it.

 Winslow and Nelson argue that the evidence was insufficient to convict them under the Travel Act, because the government failed to prove that they performed or attempted to perform an actual bombing. All of the cases cited by the appellants, discussing the substantive law of attempt, are inapposite because the indictment charged them with subparagraph three of 18 U.S.C. § 1952(a). Section 1952(a)(3) requires the government to prove only that a defendant committed " 'a subsequent overt act in furtherance of [the] unlawful activity.' " *See Stafford*, 831 F.2d at 1482 (citations omitted); *United States v. Jenkins*, 943 F.2d 167, 173 (2nd Cir.) ("Unlike the crime of attempt, the Travel Act does not require that the government establish that the accused took a substantial step in furtherance of the intended unlawful activity."), *cert. denied*, — U.S. ——, 112 S.Ct. 659, 116 L.Ed.2d 751 (1991).

**D. Firearm Count**

 To prove a firearm violation under 18 U.S.C. § 924(c)(1) the government must establish two elements: (1) "the firearm at issue was 'related to,' or played some role in, the underlying crime"; and (2) "the defendant ... 'used' or 'carried' the firearm." *United States v. Torres–Medina*, 935 F.2d 1047, 1048–49 (9th Cir. 1991).

 "[A] firearm is used 'in relation to' an offense if 'the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others whether or not such display or discharge in fact occurred.' " *United States v. Phelps*, 877 F.2d 28, 31 (9th Cir.1989) (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985)), *reh'g denied*, 895 F.2d 1281 (1990). A firearm need not be within a defendant's reach during the commission of a crime or at the moment of arrest, but it "must be available" to a defendant. *Torres–Medina*, 935 F.2d at 1049. "[A] firearm may be considered available for purposes of section 924(c)(1) if its physical proximity to the defendant at any time during the commission of the crime, or during arrest, supports the inference that it emboldened him to commit the underlying offense or to resist arrest." *Id.* at 1050.

At the time Winslow and Nelson were arrested, the FBI found two loaded guns and additional ammunition in the van they occupied on their trip to Seattle. One gun,

a .38 caliber revolver, was in a holster. The other gun was a shotgun of legal length, but its barrel had been sawed off. The sawed-off shotgun was found directly under Winslow's seat in the van. Evidence was presented that he had covered it with a blanket. The .38 caliber gun was found to the immediate left of where Nelson had been sitting. These facts show that the guns were easily accessible to both Winslow and Nelson. *See United States v. Guy,* 903 F.2d 1240, 1243 (9th Cir.1990) (use element satisfied when firearm was located so as to be quickly and easily available for use). Finally, Valentino testified that Nelson told him Winslow invited them to come on the trip to Seattle to act as "lookouts" in Winslow's plan to bomb a bar. *See* Rep.Tr. at 980.

This evidence was sufficient under section 924(c)(1). *See United States v. Torres–Rodriguez,* 930 F.2d 1375, 1385 (9th Cir.1991) (when firearm serves to protect a defendant or intimidate others it is said to have a role in the crime sufficient to violate section 924(c)(1)); *United States v. Mason,* 658 F.2d 1263, 1270–71 (9th Cir.1981) (conviction under section 924(c) upheld because evidence showed defendant was brought along on drug deal for protection and gun was found in his rear waistband).

We conclude that the evidence was sufficient to support the convictions of Winslow and Nelson on the firearm count.[2]

AFFIRMED.

---

**2.** As the government pointed out at oral argument, Winslow's and Nelson's guilt on the firearm counts is also supportable under the district court's *Pinkerton* instruction. *See Pinkerton,* 328 U.S. at 646–48, 66 S.Ct. at 1183–84. Baker was not charged with the firearm offense.