993 F.2d 885
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sergio LOPEZ, Defendant-Appellant.
 No. 92-10096.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1992.
Decided May 19, 1993.
 
 Before: D.W. NELSON, REINHARDT and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sergio Lopez appeals his jury conviction and sentence for conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846, distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1), and interstate racketeering in violation of 18 U.S.C. § 1952(a)(3). We affirm both Lopez's conviction and his sentence.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Lopez and his co-defendant Gilbert Rodriguez Navarro were indicted on one count of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, two counts of distribution and one count of interstate racketeering. Both men pled not guilty and received a jury trial.
 
 
 4
 Theodoros Stellakis, the informant in this case and an admitted drug dealer, testified that he was engaged in a conspiracy with Lopez to distribute cocaine from the fall of 1989 until the time of Stellakis' arrest in September 1990. Stellakis offered detailed testimony regarding two of the transactions that formed the basis of the conspiracy charge against Lopez.
 
 
 5
 Stellakis met Sergio Lopez in November of 1989 through their mutual acquaintance Alba Barrera. Shortly after his introduction to Lopez, Stellakis told Barrera that he had a friend who "could use some cocaine." Stellakis' "friend" Strachil Christov then came to Anaheim, where he consummated a transaction for two kilograms of cocaine with Lopez, Barrera and Stellakis. Stellakis acted as Lopez's middleman, turning over the $32,000 paid by Christov to Lopez and keeping $1,000 each for himself and Barrera.
 
 
 6
 Stellakis testified that during the next year many similar transactions occurred between him, his partner Angelo Adam, Lopez, and Barrera. Stellakis was put out of business, however, in September 1990, when he was arrested by FBI narcotic agents for conspiracy to distribute cocaine. Subsequent to his arrest, Stellakis entered into a plea agreement whereby he agreed to disclose the name of his supplier and to act in an undercover role in exchange for a recommendation from the government that his sentence be reduced. Pursuant to this agreement, Stellakis contacted Lopez to negotiate a purchase of two kilograms of cocaine.
 
 
 7
 In mid-January of 1991, Lopez recruited Navarro to accompany him to Las Vegas where the sale was to take place. The two men came to Las Vegas in a truck registered to Hugo Enriques. After instructing Navarro to wait in a parking lot, Lopez went to the Tropicana Hotel to pick up a package of cocaine from a man identified as "Juan."
 
 
 8
 On January 19, 1991, undercover FBI agents and Stellakis met with Lopez and Navarro in Las Vegas to complete the purchase. Lopez directed the exchange. After the transaction was completed, the agents arrested both Lopez and Navarro.
 
 
 9
 The jury returned guilty verdicts on all counts against Lopez and he was sentenced to a term of one hundred and eighty-eight months. This timely appeal of both the conviction and the sentence followed.
 
 ANALYSIS
 I. The Conviction
 
 10
 Lopez contends that the district court erred in admitting evidence of his inaccurate tax return since the government did not provide Lopez with reasonable notice in advance of trial of its intention to introduce such evidence. We need not consider Lopez's first objection since it was not raised before the district court. United States v. Winslow, 962 F.2d 845, 849 (9th Cir.1992). Lopez also contends that the government failed to demonstrate that the evidence was being introduced for a permissible reason and that the district court failed to give a limiting instruction to the jury.
 
 A. Relevancy of the Evidence
 
 11
 Questions of the admissibility of evidence are reviewed for an abuse of discretion. United States v. Wood, 943 F.2d 1048, 1055 n. 9 (9th Cir.1991). While evidence of a person's prior crimes, wrongs, or similar bad acts may not be introduced to show that the defendant has a bad character, evidence of prior bad acts may be admitted to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b); United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir.1985). Rule 404(b) is considered to be a rule of inclusion. United States v. Ayers, 924 F.2d 1468, 1472 (9th Cir.1991). Evidence of other crimes or acts is admissible under Rule 404(b) " 'except where it tends to prove only criminal disposition.' " United States v. Sangrey, 586 F.2d 1312, 1314 (9th Cir.1978) (citations omitted).
 
 
 12
 We employ a four-part test to determine whether evidence is admissible under Rule 404(b): (1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged. Ayers, 924 F.2d at 1473. Lopez argues that the second and fourth criteria were not met.
 
 
 13
 Since the tax return was not introduced to establish intent, the fourth Ayers criterion is not relevant. Contrary to Lopez's assertion, the government did make a proffer as to the relevance of the evidence. The government introduced Lopez's bank record, which reflected a much higher income than his 1990 tax return. The omission of income on Lopez's tax return was introduced to establish "a guilty knowledge" of the drug conspiracy and to suggest that the defendant derived his income from an illegal source. "Evidence of unexplained wealth is relevant if it creates a reasonable inference that the unexplained wealth came from the narcotics conspiracy." United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir.1987). Accordingly, the court did not abuse its discretion in admitting the evidence of Lopez's tax return.
 
 B. Jury Instruction
 
 14
 Lopez did not request a limiting instruction regarding the tax return, but argues that the court is obliged to intervene sua sponte when a trial attorney fails to make such a request. We review for plain error. United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991). While it may have been prudent for the court to issue such an instruction, there was ample evidence to support the guilty verdict without considering the significance of Lopez's failure to report all of his income to the IRS. Consequently, the lack of a limiting instruction to the jury did not cause Lopez serious prejudice.
 
 II. The Sentence
 
 15
 The district court found that the conspiracy count involved at least twelve kilograms of cocaine which, under U.S.S.G. § 2D1.1(c)(6), resulted in an offense level of 32 points. Because the district court found that Lopez was an organizer or leader of a criminal activity that involved five or more participants, the court adjusted Lopez's base offense level upwards by four points pursuant to U.S.S.G. § 3B1.1(a). The court added another two points to Lopez's conspiracy conviction for obstruction of justice pursuant to U.S.S.G. § 3C1.1 resulting in a total offense level of 38 points for the conspiracy count. Next, the court grouped all of the counts against Lopez together. Finally, the court gave Lopez credit for acceptance of responsibility and thus the final offense level was 36 points.
 
 
 16
 When adjusting a sentence upward, a district court must find by a preponderance of the evidence that the facts support an upward adjustment. United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc). The district court's factual determinations are reviewed for clear error, but its legal interpretations of the Guidelines are reviewed de novo. United States v. Wilson, 900 F.2d 1350, 1355 (9th Cir.1990).
 
 A. The Base Level Offense
 
 17
 Lopez argues that the district court erred in attributing the sale of twelve kilograms of cocaine to him. Lopez also contends that the district court erred in grouping the counts against him together.
 
 
 18
 In accord with § 1B1.3(a)(1), in this instance the district court "specifically [found] that ... Stellakis had detailed approximately twelve kilograms of cocaine in his testimony and testified that he had purchased a total of approximately twenty kilograms from the defendant" during the time period covered by the conspiracy count. Accordingly, the district court made a specific finding as to Lopez's connection to the cocaine beyond the five kilograms charged.[1] This finding is not clearly erroneous.
 
 
 19
 While it did not affect his offense level, the grouping of Lopez's convictions was also proper. Section 3D1.1 provides that the court must group together closely related counts that result in conviction. Counts are considered closely related if the base "level [for each count] is determined largely on the basis of the ... quantity of a substance involved," as is the case here. U.S.S.G. § 3D1.2(d).
 
 
 20
 Lopez misguidedly argues that the counts against him cannot be grouped unless the court finds that together the counts form part of a "common scheme." Lopez's misreading of the law results from his misapplication of a separate section of the Guidelines, § 1B1.3(2), which neither the probation department nor the district court relied upon.[2] We thus affirm the district court's finding that Lopez's offense base level was 32.
 
 B. The Upward Adjustment
 
 21
 Section 3B1.1(a) instructs the court to increase a defendant's offense level by four points if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." U.S.S.G. § 3B1.1(a). For purposes of § 3B1.1, "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 (n. 1).
 
 
 22
 Lopez was convicted of conspiring to possess and distribute in excess of five kilograms of cocaine between the fall of 1989 and January 19, 1991. To meet the requirements of § 3B1.1(a)'s "headcount," the district court needed to find that at least five people were either involved with Lopez in conspiring to distribute cocaine during this period or engaged in criminal activity with Lopez that facilitated the conspiracy. The district court may engage in inferential calculation when determining the number of participants in an offense. United States v. Barbontin, 907 F.2d 1494, 1498 (5th Cir.1990).
 
 
 23
 Lopez contends that when stating its reasons for the upward adjustment, the court improperly counted as participants individuals who were not involved with Lopez in the offense of conviction. However, even if one excludes the individuals named by the district court, the record reveals that a minimum of five people worked with or for Lopez to possess and distribute cocaine from the fall of 1989 until January 19, 1991. First, Lopez may be considered a participant in his own conspiracy. United States v. Atkinson, 966 F.2d 1270, 1276 n. 8 (9th Cir.1992).
 
 
 24
 The second participant is Stellakis. Although he acted in an undercover capacity on January 19, 1991, and hence cannot be counted as a participant in that transaction, United States v. Jewel, 947 F.2d 224, 236 n. 18 (7th Cir.1991), he is criminally responsible for conspiring with Lopez to distribute cocaine during the rest of the relevant time period. Stellakis testified that during this time period he engaged in many drug deals with Lopez. These two men worked closely together to supply drugs to other sub-distributors. Often, Stellakis acted as Lopez's intermediary: Lopez "fronted" Stellakis the cocaine and Stellakis turned the proceeds from the sales over to Lopez, taking only a nominal cut for himself. Thus, Stellakis is properly counted as a participant. United States v. Dyer, 910 F.2d 530 (8th Cir.), cert. denied, 111 S.Ct. 366 (1990).
 
 
 25
 Adam is the third participant. Adam pled guilty to conspiring to distribute cocaine. The court heard testimony that Lopez possessed Adam's business card, Adam's beeper number, and cellular phone number. In addition, Stellakis testified that Adam was his partner and worked with him to distribute the cocaine supplied by Lopez. Taking these facts together, the court could properly infer that Adam was involved in a general conspiracy with Lopez and Stellakis to distribute drugs to other sub-distributors.
 
 
 26
 Fourth, the presentence report indicated that Alba Barrera was an intimate associate of Lopez and acted as a recruiter, lookout, and messenger for the drug operation. She also was involved in the drug transaction of December 1989, and thus counts as a participant.
 
 
 27
 Fifth, Navarro is properly considered a participant. Lopez engaged Navarro to provide counter-surveillance during the January 19, 1990 transaction. Navarro also was present during a drug transaction between undercover agents and Stellakis in September 1990. In addition, Lopez lived with Navarro for a time, worked with him, received mail at Navarro's home, and considered Navarro to be a member of his "family." In light of this close personal relationship, the district court could infer that Navarro was a participant in the overall conspiracy. Thus, we affirm the district court's finding that at least five individuals participated with Lopez in the conspiracy.
 
 
 28
 The second question is whether the district court erred in finding that Lopez was a leader in this drug operation. The guidelines instruct the court to consider the "exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others" when determining whether a defendant has a leadership role in an offense. U.S.S.G. § 3B1.1, comment (n. 3). We have interpreted Note 3 to require that "some degree of control or organizational authority over others" be found before a defendant may be considered a leader. United States v. Mares-Molino, 913 F.2d 770, 773 (9th Cir.1990) (emphasis supplied). We emphasize that the question of whether an individual is a participant in the criminal conduct is a separate inquiry from the question of whether he was led or organized by the defendant. There must be some evidence that an individual is working for, directed by, or otherwise subordinate to the defendant.
 
 
 29
 It is not necessary, however, for the court to find that a defendant led each of the minimum five participants. "The section simply states that an adjustment occurs if a defendant was an 'organizer or leader of a criminal activity that involved five or more participants....' " United States v. Smith, 924 F.2d 889, 896 (9th Cir.1991) (emphasis in original). Nor is it necessary for a court to find that a defendant had direct control over those he led. A finding of indirect control suffices to meet the requirements. Id. at 895-96. Finally, a district court's failure to identify each participant under a defendant's control does not provide a basis for vacating a four level upward departure.
 
 
 30
 Lopez was the chief supplier for a large group of cocaine distributors who in turn supplied cocaine to other sub-distributors. See Smith, 924 F.2d at 895-96. There is also evidence that rather than just supplying various members of the conspiracy with drugs for distribution, Lopez exercised decision-making authority and organized the group's transactions. First, Lopez provided for counter-surveillance during various drug sales. Second, Lopez negotiated the prices of the cocaine purchased by the undercover agents, and the date and time of the sale. See Avila, 905 F.2d at 299. Third, Lopez was present at many of the transactions that involved the other participants, as well as those that involved Christov and Ziolkowski. At these sales, Lopez controlled possession of the cocaine and directed the actions of others. See United States v. Castro, 972 F.2d 1107 (9th Cir.1992). Fourth, Lopez took a much larger share of the profits than the other participants. Fifth, there was evidence that Lopez both directed recruitment of accomplices and recruited accomplices on his own. For example, Stellakis was introduced to Lopez by Barrera, who was already involved with Lopez in the sale of cocaine. Lopez also recruited Navarro to accompany him to Las Vegas. Sixth, the evidence indicates that at least three of the participants acted at the direction of Lopez. Stellakis testified that Barrera acted as a courier for Lopez. So too, Lopez directed both Navarro's and Stellakis's actions during the January 19, 1991 transaction. Indeed, during the Fall 1989 sale and the January 19, 1991 sale, Stellakis only acted as Lopez's middleman.
 
 
 31
 As other circuits acknowledge, the district court is in the best position to judge the defendant's "relative culpability vis-a-vis other participants in the offense." Williams, 891 F.2d at 926. In this case there is abundant evidence that Lopez both organized and directed this conspiracy. We affirm the district court's finding that Lopez was a leader.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 1B1.3(a)(1) of the Guidelines instructs the court to consider as relevant conduct "all acts or omissions committed or aided and abetted by a defendant, or for which the defendant would be otherwise accountable, that occurred during the omission of the offense of conviction...."
 
 
 [2]
 Section 1B1.3(2) provides that the base level offense shall be determined "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme as the offense of conviction." The commentary explains that when a defendant has not been convicted of all the counts brought against him, the underlying conduct that forms the basis of the acquitted counts will be factored into the calculation of the base offense level if that conduct was part of "same course of conduct or common scheme" as the offense for which the defendant was convicted. In this instance, Lopez was convicted of multiple counts, and the base level for each count, largely depended on the quantity of drugs sold. Therefore, §§ 3D1.1(a)(1) and 3D1.2(d) mandated that these counts be grouped together