81 F.3d 170
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Enguilberto AGUILAR-AYALA, Defendant-Appellant.
 No. 95-10098.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 12, 1996.
Decided March 27, 1996.
 
 Before: REINHARDT, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Enguilberto Aguilar-Ayala appeals his 87-month sentence for conspiracy to manufacture marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Aguilar-Ayala contends that (1) the district court erred in denying an offense level reduction for Aguilar-Ayala's alleged status as a minor participant in the conspiracy, and (2) his counsel rendered ineffective assistance by failing to object at sentencing to the presentence report's recommendation against the offense level reduction for minor participation. We have jurisdiction under 28 U.S.C. § 1291.
 
 
 3
 * On June 21, 1994, the U.S. Forest Service received an anonymous tip regarding the presence of a marijuana cultivation site in the Stanislaus National Forest. Law enforcement officers located the cultivation site on July 1, 1994. The officers observed approximately 755 marijuana plants, irrigation equipment, tools, and other materials. During their surveillance of the site, the officers reported observing Aguilar-Ayala carrying irrigation equipment and a .22 caliber semi-automatic handgun.
 
 
 4
 Before arresting Aguilar-Ayala, the officers reported that he examined the leaves on some of the marijuana plants and adjusted the water lines. Several minutes later, Everardo Aguilar and Sacramento Aguilar entered the site and were arrested. Everardo Aguilar is Aguilar-Ayala's brother, and Sacramento Aguilar is Aguilar-Ayala's nephew. A search of Aguilar-Ayala's residence and vehicle revealed irrigation equipment and a receipt for the purchase of irrigation equipment.
 
 
 5
 After their arrest, Aguilar-Ayala and Aguilar claimed that they worked for a man named "Chuco" who hired them to water the plants at the cultivation site. However, Sacramento Aguilar told the police that "Chuco" was a fabricated name and that Aguilar-Ayala instructed him to tell the story about "Chuco." Sacramento also stated that Aguilar-Ayala originally planted the marijuana seedlings in Aguilar-Ayala's backyard in Livingston, California and later transferred the plants to the site in the forest.
 
 
 6
 In his presentence interview with a probation officer, Aguilar-Ayala stated that his brother and he were paid to water and set up the irrigation system at the cultivation site. Aguilar-Ayala claimed that he had worked at the site on four prior occasions at the rate of $200 per visit. He denied starting the marijuana plants at this home, and asserted that his first visit to the site had been approximately two weeks before his arrest.
 
 
 7
 Aguilar-Ayala was indicted on July 28, 1994, for conspiracy to manufacture marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one); manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) (count two); and using a firearm in connection with drug trafficking offenses in violation of 18 U.S.C. § 924(c)(1) (count three).
 
 
 8
 Pursuant to a written plea agreement, Aguilar-Ayala entered a guilty plea to conspiring to manufacture marijuana (count one). In exchange for his guilty plea, the government agreed (1) to recommend a three-level reduction for acceptance of responsibility; (2) to recommend a sentence at the low end of the applicable guideline range; and (3) to move to dismiss the remaining counts. Aguilar-Ayala reserved the right to seek a reduction for "minimal role",[1] but the government gave notice that it would "oppose any reduction based on the defendant's role." The plea agreement also provided notice that the sentencing court would not be bound to follow the parties' sentencing recommendations, and that Aguilar-Ayala may not withdraw his guilty plea if the court fails to follow the government's recommendations.
 
 
 9
 The presentence report recommended sentencing Aguilar-Ayala at the low end of the applicable guideline range of 87 to 108 months.[2] In the report, the probation officer declined to recommend a reduction for minor participation, stating:
 
 
 10
 It is not recommended the Court impose an aggravating or mitigating role adjustment on the defendant. The defendant represents he had a minor role. He states he was basically hired to irrigate the marijuana plants and would not have profited upon the eventual sale of the marijuana. However, in reviewing all statements given and evidence seized, it is questionable the defendant did not have more involvement in the operation than he acknowledges.
 
 
 11
 The probation officer added that minor participation status was not warranted in light of Aguilar-Ayala's possession of a loaded .22 caliber semi-automatic handgun at the time of his arrest.
 
 
 12
 Aguilar-Ayala did not file objections to the presentence report, and he did not raise any specific objections to the presentence report at sentencing. At sentencing, Aguilar-Ayala told the judge through an interpreter that he had read the presentence report and that he had no amendments or corrections. Aguilar-Ayala's attorney argued for leniency in light of Aguilar-Ayala's "family support in the community" and the actual weight of the marijuana that was found. On February 6, 1995, the district court sentenced Aguilar-Ayala to 87 months imprisonment, 48 months supervised release, and a $50 special assessment.[3] Pursuant to the plea agreement, the government moved for and the court granted dismissal of counts two and three. Aguilar-Ayala filed a timely notice of appeal on February 16, 1995.
 
 II
 
 13
 Since Aguilar-Ayala did not object at sentencing to the presentence report's recommendation against a reduction for minor participation, he has forfeited the right to object on appeal. See Fed.R.Crim.P. 32(b)(6) (requiring parties to communicate any objections to the presentence report); U.S.D.C. (E.D.Cal.) Loc.R. 460(h) (in the absence of unresolved, specific, written objections to the presentence report, "the Court may accept the presentence report as accurate") (effective Dec. 19, 1994); United States v. Manarite, 44 F.3d 1407, 1419 n. 18 (9th Cir.) ("If the defendant does not raise any objection to the presentence report at the time of sentencing, then she waives the right to challenge it on appeal."), cert. denied, 115 S.Ct. 2610 (1995); see also United States v. Visman, 919 F.2d 1390, 1394 (9th Cir.1990), cert. denied, 502 U.S. 969 (1991).
 
 
 14
 Although this court generally will not address arguments raised for the first time on appeal, see United States v. Winslow, 962 F.2d 845, 849 (9th Cir.1992), the court has the discretion to consider Aguilar-Ayala's claim if it falls within certain recognized exceptions to the general prohibition against considering issues for the first time on appeal. The exceptions include: (1) plain error has occurred and injustice might otherwise result; (2) "exceptional circumstances" indicate why the issue was not raised in the district court; (3) when a change in law raises a new issue while an appeal is pending; and (4) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the district court. See Winslow, 962 F.2d at 849; United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991).
 
 
 15
 Here, Aguilar-Ayala does not demonstrate exceptional circumstances why the issue was not raised at sentencing, nor does he suggest that a relevant change in the law is involved. He does not claim that the issue presented is purely one of law; on the contrary, assessing minor participation is heavily fact-sensitive. Thus, the only exception that could possibly apply is plain error. See Fed.R.Crim.P. 52(b) (plain error).
 
 
 16
 Under the plain error analysis set forth by the Supreme Court in United States v. Olano, 113 S.Ct. 1770, 1776-79 (1993), this court has the authority to reverse when (1) there was an actual error; (2) the error was plain (i.e. "clear" or "obvious"); and (3) the error affected the defendant's "substantial rights." Id. at 1177-78; see United States v. Campbell, 42 F.3d 1199, 1204 (9th Cir.1994) (applying Olano ), cert. denied, 115 S.Ct. 1814 (1995). In most cases, an error affects a defendant's substantial rights when it prejudices the defendant in such a manner that it affects the outcome of the proceedings. Olano, 113 S.Ct. at 1778. The defendant bears the burden with respect to prejudice. Id. Even if the error is plain and affects the defendant's substantial rights, the court should exercise its discretion to correct the error only if " 'a miscarriage of justice would otherwise result.' " Id. at 1779 (quoting United States v. Young, 470 U.S. 1, 15 (1985)).
 
 
 17
 On the merits, we must conclude there was no plain error; indeed, there was no error at all. Aguilar-Ayala offers two arguments in support of his claim that the district court erred in failing to reduce his sentence for his allegedly minor role in the conspiracy.
 
 
 18
 First, although Aguilar-Ayala concedes that his counsel "did not formally object on this ground before the district court," he argues that the district court erred by not making a finding on the issue because "the presentence report states that Aguilar-Ayala requested a minor participation reduction." This argument is without merit.
 
 
 19
 The local rules clearly indicate that defendants who object to the proposed presentence report must submit specific, written objections to the probation officer preparing the report. U.S.D.C. (E.D.Cal.) Loc.R. 460(d). Objections to the final report must be specifically detailed in a memorandum filed with the district court. U.S.D.C. (E.D.Cal.) Loc.R. 460(f). Considering that Aguilar-Ayala filed no objections, there were no material issues on which the district court was obliged to make findings.
 
 
 20
 Moreover, even if Aguilar-Ayala had properly objected and the district court concluded that Aguilar-Ayala's activities did not constitute minor participation, this court has held that the district court is not required to "make express factual findings concerning a defendant's role in a crime." Flores-Payon, 942 F.2d at 561 (citing United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990)). Rather, the district court is simply required to " 'make clear on the record its resolution of all disputed matters' " after giving "the parties an opportunity to present information to the court regarding any disputed factors which are important to the sentencing determination." Id. at 561 (quoting and citing Rigby, 896 F.2d at 394). In addition, the defendant bears "the burden of proving that he is entitled to a downward adjustment based on his role in the offense by a preponderance of the evidence." United States v. Davis, 36 F.3d 1424, 1436 (9th Cir.1994) (citing United States v. Sanchez, 908 F.2d 1443, 1449 (9th Cir.1990)), cert. denied, 115 S.Ct. 1147 (1995).
 
 
 21
 Here, the district court gave Aguilar-Ayala ample opportunity to present information regarding his alleged minor role in the conspiracy. Since Aguilar-Ayala failed to take advantage of these opportunities, the district court was under no obligation to resolve Aguilar-Ayala's level of participation; thus, the district court did not err in this regard.
 
 
 22
 Second, in support of his claim that his role in the conspiracy was minor, Aguilar-Ayala emphasizes his assertions that he only watered the marijuana plants on five occasions, and that he received only $200 for his efforts on each occasion. Even if these assertions are true, they do not demonstrate that Aguilar-Ayala was "substantially less culpable than the average participant." See U.S.S.G. § 3B1.2 commentary (background) ("This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."). In fact, Aguilar-Ayala does not allege that he was substantially less culpable than Aguilar, his co-defendant. In addition, Aguilar-Ayala offers no support for his statement that a person named "Chuco" hired him to water the marijuana plants. See United States v. Gavilan, 966 F.2d 530, 532 (9th Cir.1992) (district court is not bound to accept defendant's "self-serving version of events 'made with the purpose of reducing his sentence' ") (citations omitted).
 
 
 23
 On their face, Aguilar-Ayala's assertions indicate direct involvement in the cultivation of marijuana (i.e., repeatedly watering marijuana plants valued at more than $2 million). See, e.g., United States v. Belden, 957 F.2d 671, 676 (9th Cir.) (rejecting minor participant reduction for defendant who argued that he was not directly involved in watering marijuana plants, but rather merely installed and maintained a generator), cert. denied, 506 U.S. 882 (1992). This conclusion is bolstered by (1) Aguilar-Ayala's possession of a loaded firearm at the marijuana cultivation site; (2) the discovery of irrigation equipment in Aguilar-Ayala's residence; and (3) Sacramento Aguilar's statements that Aguilar-Ayala transferred the plants from his backyard to the forest and fabricated the story about "Chuco."
 
 
 24
 Since substantial evidence exists in the record to indicate that Aguilar-Ayala's role in the conspiracy was not minor, the district court did not err by accepting the presentence report's recommendation against a downward adjustment for minor participation.
 
 III
 
 25
 Ordinarily, this court will not review ineffective assistance of counsel claims on direct appeal because "[s]uch claims are more appropriately raised in habeas proceedings." United States v. Vgeri, 51 F.3d 876, 882 (9th Cir.1995) (citations omitted); see United States v. Pope, 841 F.2d 954, 958 (9th Cir.1988) ("Challenge by way of a habeas corpus proceeding is preferable as it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted."). However, the court may take exception to this general rule where " 'the record is sufficiently developed to permit the reviewing court to resolve the issue, or when assistance is so inadequate that it obviously interferes with a defendant's Sixth Amendment right to counsel.' " Vgeri, 51 F.3d at 882 (quoting United States v. Daly, 974 F.2d 1215, 1218 (9th Cir.1992) (citation omitted)). Here, the record may be considered sufficiently developed to permit the review of Aguilar-Ayala's ineffective assistance claim.
 
 
 26
 We review the ineffective assistance claim de novo. United States v. Quintero-Barraza, 57 F.3d 836, 839 (9th Cir.1995).
 
 
 27
 A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions "were outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by counsel's actions. Strickland v. Washington, 466 U.S. 668, 690-92 (1984). Accord United States v. Davis, 36 F.3d 1424, 1433 (9th Cir.1994), cert. denied, 115 S.Ct. 1147 (1995). In Strickland, the Supreme Court emphasized that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance", 466 U.S. at 689, and that a showing of prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 
 
 28
 In support of his claim that his former attorney rendered ineffective assistance of counsel, Aguilar-Ayala cites the attorney's failure to object at sentencing to the presentence report's recommendation against a downward adjustment for minor participation. The attorney's failure to raise such an objection does not demonstrate conduct "outside the wide range of professionally competent assistance." Id. at 690. A review of the record reveals more than sufficient support for the attorney's failure to raise the objection. First, substantial evidence exists in the record that Aguilar-Ayala's role in the conspiracy was not minor. Second, the district court denied co-defendant Aguilar's request for a minor participation reduction even though, in contrast to Aguilar-Ayala's case, law enforcement officers neither observed Aguilar actively fixing water lines and tending marijuana plants, nor found irrigation equipment in Aguilar's residence. Accordingly, Aguilar-Ayala has failed to satisfy the first prong of the Strickland test.
 
 
 29
 Even assuming that Aguilar-Ayala could satisfy the first prong of the Strickland test, he would be unable to provide the showing of prejudice required by the second prong. Even if the attorney had raised the objection, there is no indication that the district court would have granted the reduction for minor participation. In fact, substantial evidence indicates that the district court would have denied the reduction.
 
 IV
 
 30
 For the foregoing reasons, we affirm the district court's judgment of conviction and sentence.
 
 
 31
 AFFIRMED. Judge Reinhardt concurs in the result.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 "Minimal participants" may seek a four-level reduction, while "minor participants" may seek a two-level reduction. U.S.S.G. § 3B1.2(a)-(b)
 
 
 [2]
 This guideline range was derived from a criminal history category of I and an offense level computation of 29. The offense level computation was based on the number of marijuana plants seized (755), with each plant calculated at 1 kilogram. U.S.S.G. § 2D1.1
 We note that Aguilar-Ayala has filed with the district court a motion for modification of his sentence, based on a November 1, 1995 amendment to U.S.S.G. § 2D1.1(c), which reduces the weight assigned to a marijuana plant from 1 kilogram to 100 grams per plant over 50. Both Aguilar-Ayala and the government have requested that the district court stay consideration of this motion until after this court has decided Aguilar-Ayala's direct appeal.
 
 
 [3]
 Co-defendant Aguilar received the same sentence. Unlike Aguilar-Ayala, Aguilar specifically objected to his presentence report's failure to recommend a reduction for minor participation. At sentencing, Aguilar renewed his request for a minor role reduction. The district court declined to grant the reduction for minor participation, noting that (1) Aguilar possessed a loaded handgun at the time of his arrest, and (2) Aguilar had been "dealt a generous hand by the U.S. Attorney's office when they dismissed" the firearm possession count (carrying a mandatory five-year sentence)