**UNITED STATES of America, Appellee,**

v.

**Benjamin LEE, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**David LEE, Appellant.**

**Nos. 81–5291, 81–5292.**

United States Court of Appeals,
Fourth Circuit.

Argued April 14, 1983.

Decided Jan. 12, 1984.

---

Paul W. Spence, Asst. Federal Public Defender, Baltimore, Md. (Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on brief), for appellant Benjamin Lee.

Marlene M. Kaufman, Ellicott City, Md. (Alan L. Fishbein, Fishbein & Fishbein, P.A., Ellicott City, Md., on brief), for appellant David Lee.

J. Frederick Motz, U.S. Atty., Baltimore, Md. (Stephen J. Immelt, Asst. U.S. Atty., Baltimore, Md., on brief), for appellee.

Before RUSSELL, PHILLIPS and SPROUSE, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

David and Benjamin Lee were convicted of various federal offenses in connection with their participation in an arson scheme. On appeal they advance two primary contentions from among numerous assignments of error: that they could not, as a matter of law, have violated 18 U.S.C. § 844(i) because the uncontained gasoline used in the arson was not an "explosive" within the meaning of the statute; and that they could not, as a matter of law, have violated 18 U.S.C. § 1952(a)(2) because their "crime of violence," within the meaning of the statute, was the same as the "unlawful activity" furthered by their interstate travel. Finding no merit in these and other assignments of error, we affirm the convictions in all respects.

I

For purposes relevant to this appeal, the facts may be summarized briefly. The evidence adduced on trial indicated that defendant Benjamin Lee and two co-conspirators had traveled from New York City to Baltimore, where they set fire to Book World, a textbook business owned by defendant David Lee. The blaze, which heavily damaged the building and its contents, was accompanied by a sizeable explosion audible to passersby several blocks away. Gasoline cans were discovered in the building after the fire was extinguished, as was a glossy sheen typical of the residue of petroleum products. The testimony on trial was unequivocal, and the parties do not contest on appeal, that gasoline had been sloshed around the building and ignited with a lighter or match.

The evidence did not directly place David Lee at the arson, but he was linked with the conspiracy in numerous ways. One of the co-conspirators, Winston Hill, testified that Benjamin Lee, David's brother, had recruit-

ed him in New York City for a "job" in Baltimore. When the men arrived at their destination in Baltimore, cans of gasoline were already situated in the basement. Winston Hill testified as well that, before the blaze was set, he heard a door open amid the jingling of keys while Benjamin Lee was upstairs with another person; other evidence indicated that only David Lee and his wife had keys to the building. Furthermore, the evidence demonstrated that David Lee, whose financial status was bleak at best, had allowed his insurance on Book World to lapse months prior to the arson but had taken out a new policy, only a few weeks prior to the fire, that was based on exaggerated estimates of Book World's worth and was skewed to favor Lee's interests in the property. There also were introduced into evidence records of collect telephone calls to David Lee's residence in Maryland from locations in New York City where Winston Hill had been with Benjamin Lee.

After the fire, David Lee retained Ray Gould, an adjuster, to assist him in processing his insurance claim for the losses he had sustained. Gould mailed to the insurer proof-of-loss forms, signed by David Lee, which stated in pertinent part that the "loss did not originate by an act, design or procurement" on Lee's part.

The case was tried before a jury on a four-count indictment. Count one charged David Lee with mail fraud, in violation of 18 U.S.C. § 1341; count two charged both Benjamin and David Lee with interstate travel in aid of unlawful activity, in violation of 18 U.S.C. § 1952(a)(2); count three charged both defendants with malicious destruction of a building by means of an explosive, in violation of 18 U.S.C. § 844(i); and count four charged Benjamin Lee alone with another violation of § 844(i) for malicious destruction of a building causing personal injury. After the jury returned guilty verdicts on all counts, the district court sentenced David Lee to eight years'

imprisonment on count three, with concurrent five year sentences on counts one and two. Benjamin Lee was sentenced to twenty years' imprisonment on count four, with consecutive sentences of ten years on count three and five years on count two.

## II

■ Under 18 U.S.C. § 844(i) (1976), it is made a federal offense "to damage or destroy, by means of an explosive, any building ... used in interstate ... commerce."[1] Section 844(j) defines the term "explosive" as

gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices [as defined in 18 U.S.C. § 232], and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

The critical but straightforward question on appeal is whether this statute reaches the arson at issue, in which uncontained gasoline concededly was used as an accelerant. The Lees advance here a contention, accepted by several courts, see *United States v. Gelb*, 700 F.2d 875, 877–79 (2d Cir.1983); *United States v. Gere*, 662 F.2d 1291, 1296 (9th Cir.1981); *United States v. Birchfield*, 486 F.Supp. 137, 138–39 (M.D. Tenn.1980), and rejected by several others, see *United States v. Agrillo-Ladlad*, 675 F.2d 905, 907–12 (7th Cir.), *cert. denied*, 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982); *United States v. Poulos*, 667 F.2d 939, 941–42 (10th Cir.1982); *United States v. Hepp*, 656 F.2d 350, 352–53 (8th Cir.1981), that gasoline-accelerated arson is outside

---

1. Since the time of the instant prosecution, the statutory language has been amended. In its present form, § 844(i) prohibits attempts "to damage or destroy, by means of *fire or* explosive, any building ... used in interstate ... commerce." 18 U.S.C. § 844(i) (West Supp. 1983) (emphasis added).

the compass of § 844. More specifically, their argument runs that Congress, in enacting § 844, never intended to reach common law arson, but instead was reacting to the rash of politically motivated bombings that befell the country in the late 1960's and early 1970's. *See Gelb,* 700 F.2d at 878. Armed with this view of the legislative intent, the Lees urge that uncontained gasoline, as used in this paradigmatic arson case, falls outside the statutory definition of "explosive," necessitating reversal of their convictions under § 844.

Given the unambiguous language of the statute, we cannot agree with the narrow construction the Lees would place upon it. We think it plain that the literal definition of "explosive" embraces gasoline as a "chemical compound ... that contains any oxidizing and combustible units, or other ingredients, in such proportions ... that ignition by fire ... may cause an explosion." Indeed, the Lees advance no substantial argument to the contrary.[2]

In this circumstance, where the literal statutory language is clear, it is controlling "[a]bsent a clearly expressed legislative intention to the contrary." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Here there is no such manifest congressional intent. The legislative history, though replete with expressions of concern over the bombings that had besieged the country, is at best equivocal—considered most favorably to the Lees—with respect to Congress's view of the statute's reach over common law arson.[3] *See Gelb,* 700 F.2d at 878–79. Certainly, there is no express congressional intent that the statute was *not* meant to cover common law arson. Therefore, we think the Lees

cannot avoid the plain statutory language merely by showing that Congress, in enacting § 844, was largely concerned with a situation different from the instant prosecution. *See Caminetti v. United States,* 242 U.S. 470, 484–91, 37 S.Ct. 192, 194–96, 61 L.Ed. 442 (1917) (rejecting contention that prosecution under the Mann Act was "not within the purview of the statute when properly construed in the light of its history and the purposes intended to be accomplished by its enactment").

### III

The Lees also challenge their convictions under 18 U.S.C. § 1952(a)(2) (1976), which proscribes travel in interstate commerce with the intent to "commit any crime of violence to further any unlawful activity." They urge that there was insufficient evidence to support their convictions because arson, their "crime of violence" under the statute, was also the "unlawful activity" furthered by their interstate travel. In their view, a conviction under this statute requires that the "crime of violence" differ from the "unlawful activity."

We decline to accept this interpretation of the statute. We hold instead that, as the government contends, "nothing in the structure of Section 1952 or in its underlying purpose requires that the crime of violence that invokes the statute be distinct from the unlawful activity it furthers." The manifest purpose of the Travel Act was to proscribe the carrying out of certain unlawful activities following interstate travel. That an act charged as one taken to further the unlawful activity is the unlawful activity itself does not offend the statute's intended meaning.

---

**2.** With respect, we simply cannot agree with those decisions suggesting that the statutory definition of "explosive" is sufficiently ambiguous, on its face, as to leave unclear whether uncontained gasoline is within its literal scope. *See Gelb,* 700 F.2d at 879; *Birchfield,* 486 F.Supp. at 138–39. As the facts of this case amply demonstrate, it is not seriously in doubt that gasoline "may cause an explosion" when ignited by fire. *See also Gelb,* 700 F.2d at

880–81 (Van Graafeiland, J., concurring and dissenting).

**3.** The legislative history arguably indicates that Congress made specific inquiry into the reach of § 844 with respect to common law arson, and that it fully understood the expansive scope of the statutory language. *See Agrillo-Ladlad,* 675 F.2d at 909–11. We do not rest decision on this reading of the history, however, given the unequivocal statutory language.

Defendant's contention that such an interpretation would strip § 1952(a)(2) of any independent meaning does not persuade us. Their reasoning is as follows: the broad coverage of subsection (a)(3) already reaches any conduct that "carries on" an "unlawful activity"; hence the "crime of violence" contemplated by subsection (a)(2) must be something other than conduct that "carries on the unlawful activity," since that is already covered by subsection (a)(3), so that for purposes of subsection (a)(2), the "crime of violence" must be distinct from the "unlawful activity" of the latter subsection.

Again we agree with the government that this argument proves too much: it is impossible to conceive of any crime of violence capable of furthering an unlawful activity that was not also conduct that "carries on" the unlawful activity. That there is some degree of overlap between subsection (a)(3) and subsection (a)(2) does not rob the latter provision of any meaning. As the government points out, subsection (a)(2) has particular application to unlawful activities that entail the commission of crimes of violence. Arson is the only "unlawful activity" listed in § 1952 the commission of which is itself a "crime of violence." Where arson is involved, a charge is properly brought under subsection (a)(2) as the most precisely applicable of statutory offenses involving some possible degree of overlap.

We therefore hold that the conviction under subsection (a)(2) was proper.

### IV

Several other assignments of error are advanced on appeal that we do not deem sufficiently weighty to warrant particularized discussion. David Lee urges that there was insufficient evidence of his participation in the conspiracy to support the introduction into evidence of out-of-court statements made by co-conspirators. The Lees contend the district court committed reversible error in admitting telephone toll records into evidence. David Lee argues that the district court erred in denying his motion for acquittal on count one of the indictment, because there was insufficient evidence that he knowingly caused the mail to be used to submit fraudulent proof-of-loss forms. The Lees finally contend the district court committed reversible error in denying their motion for a mistrial, and in denying David Lee's motion for a severance.

We have carefully examined all the recited assignments of error, and find them without merit.

### V

For the foregoing reasons, the convictions of David Lee and Benjamin Lee are affirmed in all respects.

AFFIRMED.