UNITED STATES COURT OF APPEALS
**Filed 12/20/96**
TENTH CIRCUIT

UNITED STATES OF AMERICA, )
 )
  Plaintiff-Appellee, )
 )
vs. ) No.  96-3049
 ) (D.C. No. 95-CR-10012-02)
BRIAN ALVIN WALKER, ) (D. Kan.)
 )
  Defendant-Appellant. )


UNITED STATES OF AMERICA, )
 )
  Plaintiff-Appellee, )
 )
vs. ) No.  96-3064
 ) (D.C. No. 95-CR-10012-01)
BOBBERT STEVEN COOK, ) (D. Kan.)
 )
  Defendant-Appellant. )


UNITED STATES OF AMERICA, )
 )
  Plaintiff-Appellee, )
 )
vs. ) No.  96-3065
 ) (D.C. No. 95-CR-10012-03)
CAROLYN ANN SAFFOLD, ) (D. Kan.)
 )
  Defendant-Appellant. )

ORDER AND JUDGMENT[*]

Before BALDOCK, KELLY, and LUCERO, Circuit Judges.[**]

These consolidated appeals arise from a Kansas State Trooper's stop and subsequent search of a rented Chrysler minivan which uncovered 38 kilograms of cocaine. The driver of the vehicle, Defendant Brian Walker, entered a conditional plea of guilty to one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Walker to 121 months imprisonment. A jury convicted the only passenger in the vehicle, Defendant Bobbert Cook, who is Walker's half-brother, on one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), one count of conspiracy to retaliate against a witness by killing in violation of 18 U.S.C. § 371, one count of attempting to retaliate against a witness by killing in violation of 18 U.S.C. § 1512(a)(1)(A), and one count of interstate transportation in aid of racketeering in violation of 18 U.S.C. § 1952(a)(2). The district

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument in appeals 96-3049 and 96-3065. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. Those appeals therefore are ordered submitted without oral argument.

2

court sentenced Cook to 240 months imprisonment. The same jury convicted Defendant Carolyn Saffold, a friend of Walker and Cook who was not present at the time of her Codefendants' arrest, on one count of conspiracy to retaliate against a witness by killing in violation of 18 U.S.C. § 371, one count of attempting to retaliate against a witness by killing in violation of 18 U.S.C. § 1512 (a)(1)(A), and one count of interstate transportation in aid of racketeering in violation of 18 U.S.C. § 1952(a)(2). The district court sentenced Saffold to 121 months imprisonment.

In appeal 96-3049, Walker asserts the district court improperly denied (1) his pretrial motion to suppress evidence resulting from the search of the minivan, and (2) his sentencing request for a three level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In appeal 96-3064, Cook likewise asserts the district court improperly denied his pretrial motion to suppress evidence resulting from the search of the minivan. Cook also asserts the district court improperly denied (1) his motion to sever the drug charge from the witness tampering charges, (2) his motion for judgment of acquittal based upon insufficiency of the evidence, and (3) his sentencing request for a downward departure from his guideline range. In appeal 96-3065, Saffold asserts the district court improperly denied her motion for judgment of acquittal based upon insufficiency of the evidence. Our jurisdiction to review these matters arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We discuss each in turn referring to the relevant facts as necessary.

3

<u>Walker's and Cook's Motions to Suppress</u>

Well established standards govern our review of a district court's ruling on a motion to suppress. Considering the evidence in a light most favorable to the prevailing party, we accept the district court's factual findings unless those findings are clearly erroneous. <u>United States v. Cantu</u>, 87 F.3d 1118, 1120 (10th Cir.), <u>cert. denied</u>, 117 S. Ct. 265 (1996). The district court's determination of reasonableness under the Fourth Amendment, however, is a question of law reviewable de novo. <u>Id.</u>

Both Walker and Cook claim the state trooper's search of their minivan was unreasonable in violation of their Fourth Amendment rights. The district court held a suppression hearing at which Walker, Cook, and State Trooper Richard Jimerson testified. The district court subsequently made thorough findings of fact and conclusions of law in a written order denying Defendants' respective motions. The district court's findings, which we quote at length, have ample support in the record:

> Trooper Jimerson was traveling west on I-70 when he observed a blue van with California plates in the east-bound lanes [traveling approximately 74 miles per hour in a 65 miles per hour zone] . . . .
> Trooper Jimerson signaled, and the van pulled off the road. Defendant Walker was driving the van; defendant Cook had been sleeping in the back end. Trooper Jimerson informed Walker that he had been stopped for a speeding violation and asked for Walker's driver's license and proof of ownership of the van. Walker produced a valid California driver's license and a Dollar Rent-A-Car rental agreement for the van. . . . According to the rental agreement, the van had been leased in California by a Susan Greene, who resided in Philadelphia. Although the agreement stated "ADD'L DRIVER: None," Cook's signature appeared on the agreement just below Ms. Greene's signature on a line entitled "ADDITIONAL AUTHORIZED DRIVER." The agreement restricted

4

travel to California, Oregon, Arizona, and Nevada. Trooper Jimerson testified that he would not have detained Walker and Cook based on the rental papers but that the papers did "raise his suspicions."

Trooper Jimerson ordered Walker to exit the van. Walker followed Trooper Jimerson to his patrol car. The two sat in the patrol car while Trooper Jimerson did a license check and filled out a warning ticket. Trooper Jimerson also did a criminal check. He was informed by his dispatcher that Walker had been arrested on a narcotics charge. After Walker's and Cook's arrest, it was determined that the initial information was erroneous and that Walker had been arrested on a weapons charge.

Walker told Trooper Jimerson that he was traveling to North Carolina where he had arranged for a job. He said that Cook was assisting him with driving and that Ms. Greene was Cook's friend. Walker told Trooper Jimerson that Cook was going to drive the van back to California.

Trooper Jimerson gave Walker the warning ticket, his driver's license, and the rental papers to the van and told Walker that he could go. Before or as Walker was getting out of the patrol car, Trooper Jimerson asked about the contents of the van and requested permission to look through the van for illegal drugs and weapons. When Trooper Jimerson mentioned drugs and weapons, he noticed that Walker's hands started to shake. Walker answered that all he had in the van were some presents [Valentine's day gifts for his and Cook's mother] and gave his consent to search. Trooper Jimerson did not specifically ask for permission to search the presents.

Trooper Jimerson and Walker went to the van and Walker directed Cook to "pop" the back door of the van so that Trooper Jimerson could take a look inside. Trooper Jimerson saw three gift-wrapped packages in the van and noticed a strong odor of fabric softener. He was familiar with the odor and knew from training and experience (he had already seized approximately 1000 kilos of cocaine in his career) that fabric softener was used as a masking agent. Trooper Jimerson asked Walker what was in the packages and Walker replied that the packages contained a television, VCR, and camcorder. It was obvious to Trooper Jimerson that a VCR would not fit in any of the boxes.

At this point, Walker began acting in a way that made Trooper Jimerson nervous so he told Walker and Cook to stand at the front of the van.

5

Returning to the rear of the van, Trooper Jimerson noticed that one of the packages appeared to be bulging at one end. He picked that package up and smelled a very strong odor of fabric softener. Trooper Jimerson disconnected one strand of tape from a fold in the wrapping paper, and, peering into a crack in the cardboard box created by its being overfilled, saw plastic baggies like those used to package cocaine and other drugs. Trooper Jimerson then opened the box completely and discovered 18 baggies containing what turned out to be cocaine.

No. 96-3049 Tr. Vol. I at doc. #68, pgs. 1-4; No. 96-3064 Tr. Vol. I at doc. #68, pgs. 1-4.

On these facts, the district court concluded that Trooper Jimerson's examination of the packages did not exceed the scope of Walker's consent to search the minivan, and thus evidence of the cocaine was properly admissible.[1] We agree with the district court.

Whether a search remains within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances, and a district court's findings will be upheld unless those findings are clearly erroneous. United States v. Pena, 920 F.2d

---

[1] The district court initially concluded that because Walker was not listed on the minivan's rental agreement, he had no standing to challenge the search of the vehicle. See United States v. Jones, 44 F.3d 860, 871 (10th Cir. 1995) (defendant in possession and control of car rented by third party has no standing to challenge search of car). Walker, however, did claim a possessory interest, and thus had reasonable expectation of privacy, in the packages in the back of the minivan when he identified them as presents from him and Cook to their mother. We believe this sufficient to give Walker standing to challenge the search of the packages. See Arkansas v. Sander, 442 U.S. 753, 761 n.8 (1979) (where defendant conceded suitcase was his property, no issue raised as to his standing to challenge its search.), overruled on other grounds, California v. Acevedo, 500 U.S. 565 (1991). The district court further held in the alternative that even if Trooper Jimerson exceeded the scope of Walker's consent, the totality of the circumstances gave him probable cause to search the packages. Because we conclude that Officer Jimerson did not exceed the scope of the consent to search, we do not address the issue of whether he had probable cause to search the packages.

6

1509, 1514 (10th Cir. 1990), cert. denied, 501 U.S. 1207 (1991).  The standard for measuring the scope of a defendant's consent is one of "'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991).  In Jimeno, the Court held that a suspect's consent to search his car for drugs included consent to search a container in the car that might reasonably hold drugs. Id. at 249.  The Court reasoned that the defendant had given the officer a general consent to search the car, and had placed no limitation on the scope of the search. Id. at 251.  Similarly, we have held that where a defendant does not limit the scope of a general authorization to search, and does not object when the search exceeds what he later claims was a more limited consent, an officer is justified in searching the entire vehicle and any containers in it that might contain the suspected contraband. E.g., United States v. Wacker, 72 F.3d 1453, 1470 (10th Cir. 1995), cert. denied, 117 S. Ct. 136 (1996); United States v. Deases, 918 F.2d 118, 122 (10th Cir. 1990), cert. denied, 501 U.S. 1233 (1991).

In this instance, Trooper Jimerson asked Walker if he could search the minivan for drugs and weapons.  Walker consented, placing no limitation on the search.  Before Trooper Jimerson ordered Walker and Cook to the front of the minivan, both Defendants witnessed the trooper's interest in the packages in the back of the minivan.   Neither Defendant objected.  Under these circumstances, we conclude Trooper Jimerson's search of the packages in the back of the minivan was within the scope of Walker's consent.

7

<u>Walker's Request for a Three Level Reduction for Acceptance of Responsibility</u>

The district court awarded Walker a two point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Walker asserts he is entitled to an additional point reduction because he timely notified authorities of his intention to plead guilty.[2] A defendant bears the burden of establishing his entitlement to a reduction for acceptance of responsibility. <u>United States v. Gassaway</u>, 81 F.3d 920, 922 (10th Cir. 1996). The district court has broad discretion to determine whether to award a reduction, and we will not disturb the court's decision absent clearly erroneous findings. <u>Id.</u>

In this case, the district court refused to permit Walker to plead guilty one day following the suppression hearing and before the court's ruling, because during the

---

[2]     Section 3E1.1 provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense  level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

    (1) timely providing complete information to the government concerning his own involvement in the offense; or

    (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

hearing, Walker testified that he did not know the packages in the minivan contained cocaine. See United States v. Robertson, 45 F.3d 1423, 1437 (10th Cir.) (Fed. R. Crim. P. 11 vests district court with discretion to accept or reject guilty plea), cert. denied, 115 S. Ct. 2258 (1995). While refusing to accept the plea at that time, the district court stated that it would still accept the plea if Walker provided a satisfactory explanation for his involvement in the offense. Walker never provided an explanation. Walker did not again express a desire to plead guilty until immediately before trial. Thus, the government was forced to prepare for trial and the court was unable to schedule its calendar so as to avoid delaying the trial of Cook and Saffold. Under these facts, the district court did not abuse its discretion in refusing to award Walker an additional point reduction for acceptance of responsibility.

Cook's Motion to Sever Charges

In addition to being charged along with Walker for possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1), Cook was charged in a Second Superseding Indictment with three additional counts alleging he sought to murder Trooper Jimerson to eliminate his testimony. Specifically, Cook was charged with conspiring to retaliate against a witness, 18 U.S.C. § 371, attempting to retaliate against a witness, 18 U.S.C. § 1512(a)(1)(A), and interstate transportation in aid of racketeering, 18 U.S.C. § 1952(a)(2). Prior to trial, Cook moved to sever the drug count from the remaining counts asserting misjoinder. Cook further asserted that his right to a fair trial

would be jeopardized absent severance. The district court denied the request in a written order. No. 96-3064, Tr. Vol. 1 at doc. #108, pgs. 2-6.

While in pretrial detention, Cook arranged with the assistance of his cellmate James Starks, a government informant, to hire one Daniel Ortega to murder Trooper Jimerson. Ortega was actually undercover Special Agent Thomas Walsh posing as a friend of Starks. Cook contacted Codefendant Saffold and told her to send him $1,000.00 so he could retrieve his repossessed truck. Saffold gave her friend, Sandra DeLoach, $1,000.00 cash to purchase cashier's checks, and told her to mail the checks to Daniel Ortega at the Ramada Inn in Wichita, Kansas. DeLoach mailed the checks as Saffold instructed.

Under Fed. R. Crim. P. 8(a), joinder of offenses is permitted if the offenses arise from "transactions connected together or constituting parts of a common scheme or plan." While a question of misjoinder under Rule 8 is a question of law subject to de novo review, we construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system. United States v. Janus, 48 F.3d 1548, 1557 (10th Cir.), cert. denied, 116 S. Ct. 87 (1995). Even if the district court concludes joinder is proper under Rule 8, the court still has discretion to sever under Fed. R. Crim. P. 14 if the joinder may prejudice the defendant. Id. The burden on the defendant, however, to "'show an abuse of discretion in this context is a difficult one.'" Id. (quoting United States v. Valentine, 706 F.2d 282, 290 (10th Cir. 1983)).

10

We have no quarrel with the district court's denial of Cook's motion for severance. The charges against Cook arise from connected transactions. Counts II, III, and IV alleged that Cook planned a violent crime to eliminate evidence relating to Count I. We believe this a sufficient nexus to permit joinder under Fed. R. Crim. P. 8(a). Moreover, as the district court noted, evidence of Cook's witness tampering would likely be admissible at trial to show his guilty knowledge on the drug charge, while evidence of the drug charge would likely be admissible to show his motive for engaging in witness tampering. See e.g., United States v. Romero, 54 F.3d 56, 60 (2d Cir. 1995) (evidence of defendant's involvement with narcotics operation admissible as evidence of motive to murder government witness), cert. denied, 116 S. Ct. 1449 (1996); United States v. Balzano, 916 F.2d 1273, 1281 (7th Cir. 1990) (evidence of witness tampering admissible to show consciousness of guilt on underlying charge). Severance was unnecessary and the district court did not err in denying Defendents' motions.

Cook's and Saffold's Motions for Judgment of Acquittal<br>Based Upon Insufficiency of the Evidence

Cook asserts that the government presented insufficient evidence to sustain his convictions on Counts I & II of the Second Superseding Indictment. Saffold asserts that the government presented insufficient evidence to sustain her convictions on Counts II, III, & IV of the same indictment.[3] The district court disagreed and denied their respective

---

[3]     Saffold was not charged in Count I of the Second Superseding Indictment.

11

motions for judgment of acquittal.  See Fed. R. Crim. P. 29.  We review the sufficiency of the evidence in a light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.  United States v. Jones, 44 F.3d 860, 864 (10th Cir. 1995).

A.

We have no difficulty sustaining Cook's conviction on Counts I of the Second Superseding Indictment.  Count I charged Cook with possession of cocaine with intent to distribute in violation of 18 U.S.C. § 841(a)(1).  To sustain a conviction under § 841(a)(1), the government must prove that the defendant (1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute a controlled substance.  United States v. Mains, 33 F.3d 1222, 1228 (10th Cir. 1994).  Possession of a controlled substance may be either actual or constructive.  Constructive possession occurs when a person "'knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics were found.'"  Id. (quoting United States v. Hagar, 969 F.2d 883, 888 (10th Cir.), cert. denied, 506 U.S. 964 (1992) (internal brackets omitted)).

Upon review of the record, we find ample evidence from which a reasonable jury could find Cook guilty beyond a reasonable doubt of possession of cocaine with intent to distribute.  The cocaine was found in the rented minivan which Cook was authorized to drive.  One of the packages containing the cocaine had a Valentine's Day card attached

with Cook's name on it. After being read his rights and while being transported to jail, Cook asked how much trouble he was in for "hauling the stuff." No. 96-3064 Tr. Vol. VII at 193. Finally, Cook's desire to prevent Trooper Jimerson from testifying illustrates a consciousness of guilt as to the drug charge. While Cook denied any knowledge of the cocaine at trial, the jury obviously chose not to believe him.

B.

The conspiracy count against Cook and Saffold presents a more difficult problem. Count II of the Second Superseding Indictment alleged that Cook and Saffold conspired "with each other to kill Richard Jimerson with the intent to prevent the testimony of said Richard Jimerson . . . ." No. 94-3064 Tr. Vol. I at doc. #72, pg. 2; No. 94-3065 Tr. Vol. I at doc. #72, pg. 2. To support a conspiracy conviction, the government must show that (1) the defendant agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily took part in the conspiracy, and (4) the conspirators were interdependent. Jones, 44 F.3d at 864-65. "While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference." Id. (internal quotations omitted).

Our review of the record indicates that the government did not present any direct evidence that Saffold knew of Cook's intention to murder Trooper Jimerson. Moreover,

13

Cook testified that he had not told Saffold of his intentions. No. 94-3065 Tr. Vol. V at pg. 566. While the government's evidence may give rise to a reasonable inference that Saffold suspected illegal activity, mere suspicion of illegal activity is insufficient to prove participation in a conspiracy. Jones, 44 F.3d at 866. A person "does not become a participant in a conspiracy merely by associating with conspirators known to be involved in crime. One must agree to participate in order to be convicted for conspiracy." Id. (internal citations omitted). The circumstantial evidence which the government presented does not justify the inference that Saffold knew the money she had sent to the undercover agent was to be used as payment on a contract to murder Trooper Jimerson. Accordingly, the evidence is insufficient to establish that Saffold agreed with Cook to violate the law, and thus Saffold is entitled to a judgment of acquittal on Count II.

Because the evidence is insufficient to support Saffold's conspiracy conviction, Cook's conspiracy conviction too must fail. First, the government did not charge that Cook conspired with his cellmate Starks or the undercover agent. But even if the government had, we held in United States v. Barboa, 777 F.2d 1420 (10th Cir. 1985), that "there can be no indictable conspiracy involving only the defendant and government agents or informers." Id. at 1422. Second, the government did not charge that Cook conspired with unknown conspirators. See United States v. Howard, 966 F.2d 1362, 1363-64 (10th Cir. 1992) (lone conspirator's conviction upheld where government alleged and jury could infer existence of unknown coconspirators). Third, although we

14

have questioned our holding in <u>Romontio v. United States</u>, 400 F.2d 618, 619 (10th Cir. 1968), <u>cert. dismissed</u>, 402 U.S. 903 (1971), that a sole conspiracy conviction must be reversed when all other alleged conspirators are acquitted, <u>see</u> <u>United States v. Sasser</u>, 974 F.2d 1544, 1560-61 (10th Cir. 1992) (citing <u>United States v. Powell</u>, 469 U.S. 57 (1984)), <u>cert. denied</u> 506 U.S. 1085 (1993); <u>Howard</u>, 966 F.2d at 1363-64 (citing <u>Powell</u>), <u>Romontio</u> remains the law of this circuit. <u>See</u> <u>United States v. Suntar Roofing, Inc.</u>, 897 F.2d 469, 475-76 (10th Cir. 1990) (citing <u>Powell</u> and <u>Hartzel v. United States</u>, 322 U.S. 680 (1944)). Like Saffold, Cook is entitled to a judgment of acquittal on Count II of the Second Superseding Indictment.

C.

We next address Saffold's motion for judgment of acquittal on Counts III & IV of the Second Superseding Indictment. The former count charged Saffold with attempting to kill a witness, 18 U.S.C. § 1512(a)(1)(A), while the latter count charged her with interstate transportation in aid of racketeering, 18 U.S.C. § 1952(a)(2). Under § 1512(a)(1)(A), the government must prove that a defendant attempted to kill another person who is a potential witness or informant and, under § 1952(a)(2), the government must prove that a defendant facilitated interstate travel with the intent to commit a violent crime in furtherance of unlawful activity.

We have previously held that Saffold is entitled to a judgment of acquittal on the conspiracy count because the government did not prove she knew of Cook's plan to

15

murder Trooper Jimerson. Without proving Saffold's knowledge of the plan, the government could not possibly prove Saffold possessed the mens rea required for conviction under §§ 1512(a)(1)(A) & 1952(a)(2). Accordingly, Saffold's convictions on Counts III & IV of the Second Superseding Indictment must fail as well.

<u>Cook's Request for a Downward Departure From His Guideline Range</u>

At his sentencing, Cook asserted he was entitled to a downward departure from his guideline range due to his aberrant behavior, incomplete coercion and mental condition. In a written order, the district court concluded that "the factors cited by the defendant - whether considered alone or in combination - are not present to such a degree as to warrant a departure from the sentencing guidelines." No. 95-3064 Tr. Vol. 1 at doc. #141, pg 6. Cook now asserts that the district court erroneously concluded that it lacked authority to depart downward from his guideline range.

We have repeatedly held that "'a district court's discretionary refusal to depart downward from the guidelines does not confer appellate jurisdiction under 18 U.S.C. § 3742.'" <u>United States v. Williamson</u>, 53 F.3d 1500, 1529 (10th Cir.), <u>cert. denied</u>, 116 S. Ct. 218 (1995) (quoting <u>United States v. Holsey</u>, 995 F.2d 960, 963 (10th Cir. 1993)). Given the district court's comments in denying Cook's request to depart downward, Cook's assertion that the court did not recognize its authority to depart downward is meritless. The statements of the district court evince a conscious decision to deny Cook's

request because the facts did not warrant it. We therefore have no jurisdiction to review the district court's discretionary refusal to depart downward.

<u>Summary</u>

The conviction and sentence of Defendant Brian Walker is affirmed in its entirety. The conviction and sentence of Defendant Bobbert Cook is affirmed as to Counts I, III, & IV, and reversed as to Count II of the Second Superseding Indictment. The conviction and sentence of Defendant Carolyn Saffold is reversed.

Appeal No. 96-3049 AFFIRMED.

Appeal No. 96-3064 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

Appeal No. 96-3065 REVERSED and REMANDED.


Entered for the Court,


Bobby R. Baldock
Circuit Judge

17