**UNITED STATES of America,
Plaintiff,**

v.

**Richard O'HARA, Defendant.**

**No. 00–CR–170.**

United States District Court,
E.D. Wisconsin.

April 26, 2001.

Eric Klumb, Tracy Johnson, Asst. U.S. Attys., Milwaukee, WI, for plaintiff.

Allan Ackerman, Chicago, IL, for defendant.

### MEMORANDUM

ADELMAN, District Judge.

Defendant Richard O'Hara, a Chicago-based antiques and art dealer, was charged in a multi-count indictment with participating in a conspiracy to dispose of stolen valuable Renaissance-era astronomical tools—three astrolabes and an armillary sphere. Two counts of the indictment charged O'Hara with interstate travel in aid of extortion, in violation of the Travel Act, 18 U.S.C. § 1952.

The government sought jury instructions on these counts under § 1952(a)(2), which authorizes a sentence of up to 20 years per count (and up to life imprisonment if death results from the crime), rather than or in addition to instructions under § (a)(3), for which the maximum sentence is 5 years per count. I orally denied the government's request, and now issue this memorandum to explain my ruling.

In pertinent part, the statute reads as follows:

(a) Whoever travels in interstate or foreign commerce ... with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform [such an act commits a crime].
18 U.S.C. § 1952(a).

The Travel Act was enacted in 1961 as part of Attorney General Robert F. Kennedy's program against organized crime and racketeering. House Comm. on the Judiciary, H.R.Rep. No. 87–966 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2664, 2666; Steven G. Shapiro, *Travel Act*, 24 Am. Crim.L.Rev. 735, 735–36 (1987). As initially enacted, the maximum sentence under the Travel Act was 5 years' imprisonment, regardless of which subsection was involved. Travel Act, Pub.L. No. 87–228, § (a), 75 Stat. 498 (1961) (codified as amended at 18 U.S.C. § 1952). As a result, few prosecutions were brought under § (a)(2). *See, e.g.,* Stephen D. Bohrer et al., *Travel Act*, 28 Am.Crim.L.Rev. 679, 704 (1991) (describing § (a)(2) as "seldom used"). But in 1994, Congress increased the maximum sentence under §. (a)(2) to 20 years, while leaving §§ (a)(1) and (a)(3) with a maximum sentence of 5 years. Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 140007(a), 108 Stat. 1796, 2033 (codified at 18 U.S.C. § 1952(a)).

For many decades, § (a)(2) was perceived as incorporated by § (a)(3) and because the same sentencing provisions governed both subsections, § (a)(2) was of little independent significance. In *United States v. Briggs*, 700 F.2d 408, 417 (7th Cir.1983) (quoting *United States v. Rizzo*, 418 F.2d 71, 74 (7th Cir.1969)), the Seventh Circuit paraphrased the Travel Act simply as criminalizing "the use of an in-

terstate facility, with the intent to promote or further an unlawful activity in violation of state law, and the performance of some act designed to promote or further that illegal purpose," thus discounting any independent role for § (a)(2).[1] One commentator observed that § (a)(2) "seems completely subsumed under the catch-all [§ (a)(3) ]." Barry Breen, *The Travel Act (18 U.S.C. § 1952); Prosecution of Interstate Acts in Aid of Racketeering*, 24 Am. Crim.L.Rev. 125, 155 (1986). Accordingly, little case-law developed under § (a)(2) before the sentencing scheme changed in 1994.

■ The issue here is whether the same conduct may satisfy both the "unlawful activity" and the "crime of violence" prongs of § (a)(2). (O'Hara's extortion is a crime of violence under 18 U.S.C. § 16(b), and extortion is defined as an "unlawful activity" for purposes of the Travel Act, 18 U.S.C. § 1952(b)(i)(2).) I have found only two decisions squarely addressing this issue, both, interestingly, predating the 1994 sentence increases to § (a)(2). In *United States v. Lee*, 726 F.2d 128 (4th Cir.1984), the Fourth Circuit held that the same conduct could satisfy both prongs of § (a)(2), agreeing with the defendant that this interpretation made § (a)(2) a subset of § (a)(3) but rejecting the defendant's argument that this was impermissible. By contrast, the Ninth Circuit held in *United States v. Winslow,*

962 F.2d 845, 852 (9th Cir.1992), that the government must establish four elements for an arson conviction under § (a)(2): "(1) travel in or use of the facilities of interstate commerce with (2) intent to commit a crime of violence in order (3) to further an arson of a building or business and (4) a subsequent overt act in furtherance of arson." However, neither the *Lee* nor the *Winslow* courts explained why their results were compelled; *Winslow* was concerned with the overt act requirement, and *Lee* based its decision solely upon whether the government's preferred reading was consistent with Congress's intent and would, as the defendant urged, render § (a)(2) impermissibly redundant.[2]

■ In the absence of helpful precedent, I evaluate the statute to determine whether the same conduct may satisfy both the "crime of violence" and the "unlawful activity" prongs. Analysis begins with the plain meaning of the words of the statute, *Watt v. Alaska*, 451 U.S. 259, 265–66, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981), and is informed by surrounding clauses. By its terms, § (a)(2) is violated by one who intends to commit a crime of violence "to further any unlawful activity." 18 *Oxford English Dictionary* 166 (2d ed.1989). As used here, "to further" is an infinitive that indicates purpose or intention. In this usage, "to" plus the infinitive is equivalent to "in order to" plus the infinitive or

---

1. As *Rizzo* indicates, an overt act is a required element of a Travel Act offense, but it is irrelevant to the issue here and so I do not repeat it for the remainder of this memorandum.

2. In addition, several courts, including the Seventh Circuit, have upheld convictions under § (a)(2) where the only apparent crime of violence was also the underlying unlawful activity. *United States v. McNeal*, 77 F.3d 938, 945 (7th Cir.1996) (extortion); *United States v. Salameh*, 152 F.3d 88, 152–53 (2nd Cir. 1998) (arson).

In *United States v. Winter*, 22 F.3d 15, 20–21 (1st Cir.1994), the First Circuit held that although sports bribery was "unlawful activity" under the Travel Act, it was not a "crime of violence" and therefore could not sustain a conviction under § (a)(2). The court thus appeared to take for granted that in other cases a "crime of violence" under § (a)(2) could be the same as the underlying "unlawful activity."

But none of these decisions directly address the question at issue here, namely, whether it is appropriate for the same conduct to satisfy both prongs.

"for the purpose of" plus the gerund form of the infinitive. *Id.* Thus, intending to commit a crime of violence "to further any unlawful activity" means intending to commit a crime of violence "in order to further any unlawful activity" or "for the purpose of furthering any unlawful activity."

The verb "further" in turn means promote, advance, aid, or facilitate. *Random House Webster's College* Dictionary 527 (1997); *Grunewald v. United States,* 353 U.S. 391, 405, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *United States v. Johnson,* 927 F.2d 999, 1002 (7th Cir.1991); *United States v. Koen,* 982 F.2d 1101, 1107 (7th Cir.1992). Thus, § (a)(2) criminalizes one type of intended promotion or facilitation of unlawful activity, namely, the intent to promote or further unlawful activity by committing a crime of violence. *See United States v. Walker,* 104 F.3d 368, 1996 WL 731631, at *7 (10th Cir.1996) (unpublished order and judgment) ("[U]nder § 1952(a)(2), the government must prove that a defendant facilitated interstate travel with the intent to commit a violent crime in furtherance of unlawful activity.").

This reading is confirmed by § (a)(3), which makes it unlawful to intend to *"otherwise* promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." § 1952(a)(3) (emphasis added). The use of "otherwise" in § (a)(3) indicates that in Congress's view, intending to commit a crime of violence under § (a)(2) is simply one way in which an offender can intend to promote or facilitate unlawful activity. What distinguishes violations of §§ (a)(2) and (a)(3) is thus not the type of unlawful activity that the offender intends to promote or facilitate, but rather whether the offender intends to promote or facilitate unlawful activity by committing a crime of violence (which would violate § (a)(2)) or by some other means (which would violate § (a)(3)).

The government's preferred interpretation of § (a)(2) would require the verb "to further" to include a reflexive meaning; just as an ill-conceived proposal might be self-defeating, so certain crimes of violence would be self-furthering. But this reflexive interpretation offends the plain and ordinary meaning of the infinitive "to further." The government's desired reading of § (a)(2) would re-write it from what it says—"commit any crime of violence to further any unlawful activity"—into "commit any unlawful activity that is also a crime of violence," and thus would write "to further" out of the statute.

■ Two different rules of statutory construction prohibit any such emendation. First, it is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute. *United States v. Menasche,* 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955). Subsection (a)(2) makes perfectly good sense when "to further" is given its ordinary and natural meaning and the subsection is read as making it unlawful to intend to commit a crime of violence for the purpose of promoting some other unlawful activity. There is no ambiguity in the words of the statute, and the government provides no reason to re-write the statute as though it did not include the words "to further."

■ As mentioned above, the Fourth Circuit reached a contrary conclusion. "That an act charged as one taken to further the unlawful activity is the unlawful activity itself does not offend the statute's intended meaning." *Lee,* 726 F.2d at 131. This is true—but it is also true that the more defendant-friendly reading offends neither the statute's intended meaning, nor the plain and ordinary meaning of the statute's actual words. The Travel Act was aimed primarily at "persons who reside in one State while operating or man-

aging illegal activities located in another," *Rewis v. United States*, 401 U.S. 808, 811, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), and was designed to be of material assistance to the states in combating pernicious undertakings which cross State lines, *United States v. Nardello*, 393 U.S. 286, 292, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969) (quoting S.Rep. No. 87–644, 4 (1961); H.R.Rep. No. 87–966). Both proposed interpretations of § (a)(2) would therefore advance the Travel Act's intended purpose; both criminalize subsets of conduct already criminalized by § (a)(3). Moreover, the legislative history regarding § (a)(2) is skimpy,[3] which makes me dubious that it can provide any meaningful guidance as to whether Congress intended the reflexive meaning of "to further" rather than the plain and natural meaning.

 But because this is a criminal statute, it is irrelevant whether the legislative history supports the government's position. Looking to a statute's intended meaning is permissible only when the statute is ambiguous. *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707 (7th Cir.1994). As discussed above, I find no ambiguity in the plain and natural meaning of the statute's words. But even if there were some ambiguity, the court would be required to resolve it in favor of lenity. *United States v. R.L.C.*, 503 U.S. 291, 305, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (Souter, J., plurality opinion); *id.* at 307–09, 112 S.Ct. 1329 (Scalia, J., concurring); *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955). The rule of lenity is rooted in "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (internal quotation marks and citation omitted). Criminal statutes must provide fair warning concerning the conduct that they render illegal. *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Even if the criminal statute was ambiguous, the rule of lenity would forbid looking to legislative intent; ambiguous criminal statutes must be read to favor the defendant and not the government. *R.L.C.*, 503 U.S. at 307–09, 112 S.Ct. 1329 (Scalia, J., concurring). If Congress wishes a 20–year sentence to apply to those who cross state lines intending to commit an unlawful act that is also a crime of violence, it must say so clearly. For the time being, such conduct violates only § (a)(3) and is subject to that subsection's maximum 5–year sentence.

---

**3.** There are only a few pages of legislative history for the Travel Act as enacted in 1961, and none of it discusses any of the subsections of section (a). H.R.Rep. No. 87–966; S.Rep. No. 87–644.

The legislative history for the 1994 amendment to the Travel Act has only three items of note. The first is that the Senate bill had two duplicative sections, one entitled, "Increased Penalties for Travel Act Violations," S.1607, 103rd Cong. § 2906 (1993), and the other entitled, "Increased Penalties for Travel Act Crimes Involving Violence and Conspiracy to Commit Contract Killings," *id.* § 617. The conference committee agreed to strike § 617 as duplicative, but retained its title in the House version, which was the version enacted. H.R.3355, 103rd Cong. § 140007 (1994) (enacted); H.R.Conf.R. No. 103–711, at 394

(1994), *reprinted in* 1994 U.S.C.C.A.N. 1839, 1862. The second item of note is that at least one senator read § 1952(a)(2) as I do; an exhibit introduced by Senator Feinstein stated that S.1607 § 2906 "increases penalty for interstate travel to commit violent crime in furtherance of drug trafficking from 5 to 20 years." 140 Cong.Rec. S12,416 (daily ed. Aug. 24, 1994) (exhibit introduced by Sen. Feinstein). And the final item of note is that the enacted provision is part of Title XIV of the Violent Crime Control and Law Enforcement Act of 1994, which addresses youth violence. This can be traced to S.1607 § 617, but the legislative history does not indicate why this title includes Travel Act penalty enhancements; this is the only section of Title XIV that does not relate to youth.

For these reasons, I find that in order to violate § 1952(a)(2), a defendant must intend to commit a crime of violence for the purpose of furthering some other unlawful activity. Because the government did not allege that O'Hara did this, I declined to provide instructions under § (a)(2).